Gary **BOLLENBACHER**, Plaintiff,

· v.

**HELENA CHEMICAL COMPANY**, as named **Long Term Disability Plan**; **Helena Chemical Company**, as named **Plan Administrator**; and **UNUM Life Insurance Company of America**, as *de facto* **Plan Administrator of the Plan**, Defendants.

No. 1:95–CV–350.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

June 24, 1996.

John C. Theisen, Mark S. Kittaka, Gallucci Hopkins and Theisen PC, Fort Wayne, IN, for Gary Bollenbacher.

Carolyn W. Spengler, Hunt Suedhoff Borror and Eilbacher, Fort Wayne, IN, Philip M. Berkowitz, Kenneth W. DiGia, Epstein,

Becker and Green, New York City, for Helena Chemical Company.

Carolyn W. Spengler, Hunt Suedhoff Borror and Eilbacher, Fort Wayne, IN, Douglas D. Powers, Lisa M. Dillman, Baker and Daniels, Fort Wayne, IN, for Unum Life Insurance Company of America.

## MEMORANDUM OF DECISION AND ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court for resolution of a variety of motions and issues. Defendant Helena Chemical Company, as named Plan Administrator ("Helena"), filed a Motion to Dismiss on December 13, 1995. During January and February of 1996, the parties filed an array of motions and cross-motions. The court addressed most of those motions in an Order entered February 29, 1996. In that Order, the court determined, among other things, that Helena's Motion to Dismiss was in actuality a Motion for Summary Judgment. As such, the court took the motion under advisement and ordered Helena and plaintiff Bollenbacher ("Bollenbacher" or "plaintiff") to conduct further briefing on the issues raised by Helena. To that end, Helena filed a Supplemental Memorandum of Law in Support of its Motion for Summary Judgment on March 29, 1996, and Bollenbacher filed a response on April 23, 1996. Helena then filed a Reply on May 7, 1996. Both parties incorporated into these briefs much of the argument presented in their initial briefs filed in January and February. Consequently, Helena's motion for summary judgment is now ripe for resolution.

In addition, on February 1, 1996, Bollenbacher filed a Motion for Leave to File an Amended Complaint. On February 12, 1996, having not yet received any response to this motion to amend, Magistrate Judge Cosbey granted plaintiff's motion.[1] (This case is on partial referral to the Magistrate pursuant to 28 U.S.C. § 636(b)(1)(A) and N.D.Ind.L.R. 72.1(c).) The defendants then protested, arguing that they intended to file a response. Thus, on February 14, 1996, Magistrate Judge Cosbey entered an Order granting defendants leave to file their response to the motion to amend. The Magistrate directed that "[t]he Court will consider the response as a motion to reconsider the granting of the motion to amend to which the Plaintiff may file a reply." Helena then filed, on February 20, 1996, Defendant's Opposition to Plaintiff's Motion for Leave to File an Amended Complaint. Bollenbacher filed a Response to Helena Chemical Company's Motion to Reconsider the Court's Order Granting Plaintiff Leave to Amend His Complaint on March 11, 1996. Helena filed a reply on March 21, 1996. Defendant UNUM Life Insurance Company of America ("UNUM") filed a Motion for Clarification on February 21, 1996, seeking to clarify its obligation to answer or otherwise respond to plaintiff's amended complaint. On that same date, Magistrate Judge Cosbey granted the motion and ordered that UNUM's obligation to answer or otherwise respond to the amended complaint would be stayed pending the resolution of defendant Helena's Motion to Reconsider the order granting plaintiff leave to file his amended complaint. On May 14, 1996, plaintiff filed a Motion for Leave to File a Second Amended Complaint. Defendant Helena filed a Response in Opposition to Plaintiff's Motion on May 31, 1996, and plaintiff filed a reply on June 14, 1996.

For the following reasons, defendant Helena Chemical Company's Motion for Summary Judgment is GRANTED; defendant Helena's Motion for Reconsideration of this court's order granting plaintiff leave to file an amended complaint is GRANTED as to Counts II, III and IV of the amended complaint and DENIED as to Count I[2]; Plain-

---

1. As explained later in this Order, this court will grant Helena's motion for reconsideration of Magistrate Judge Cosbey's Order granting plaintiff leave to file an amended complaint. However, it should be noted that Judge Cosbey granted plaintiff's request pursuant to Fed.R.Civ.P. 15 and that he did not have occasion to reach a decision on the merits of Helena's objections, as Helena had not yet filed any response to plaintiff's motion.

2. Count I of the amended complaint restates plaintiff's original ERISA action for wrongful denial of benefits. That claim is not affected by this court's granting of Helena's motion for reconsideration of the court's granting of plaintiff's

tiff's Motion for Leave to File a Second Amended Complaint is DENIED; and UNUM is hereby granted permission to file a Motion for Reconsideration of the court's previous Order granting plaintiff's request to file an amended complaint, as to Count V of that amended complaint only, to which plaintiff may file a response. UNUM's motion shall be filed within thirty (30) days of the date of this Order; plaintiff's response shall be filed within fifteen (15) days after service of UNUM's motion; and UNUM's reply, if any, shall be filed within fifteen (15) days after receipt of plaintiff's response.

## STATEMENT OF FACTS

Gary Bollenbacher was employed by Helena Chemical Company as a chemical applicator. He worked for Helena, and its predecessor, Riverside Warehouse Company, for nearly seven years. In early May of 1991, Bollenbacher sustained an injury while driving a chemical applicator truck. The incident allegedly resulted in spinal injuries which later led to degenerative disc disease. In October of 1992, Bollenbacher could no longer perform his job as a chemical applicator, and so Helena transferred him to a less physically demanding clerical position and continued to pay him his applicator's salary. Bollenbacher's health allegedly continued to deteriorate over the next eleven months, forcing him to miss many days of work. Bollenbacher claims that Helena offered him a position in one of the company's other facilities, but that he refused because it would entail a longer drive to and from work each day, only adding to his daily pain and suffering. On September 28, 1993, approximately three to four weeks after they offered him a transfer, Helena representatives informed Bollenbacher that he was being laid off from his clerical position.

The parties concede that at all times relevant to this controversy, Helena offered a long term disability plan to its employees, said plan having been purchased by the company from UNUM Life Insurance Company of America ("UNUM"). The policy, number 311769, had an effective date of December 1, 1983. Bollenbacher contends that he was wrongfully denied long term disability benefits under the plan, and he brought this action pursuant to 29 U.S.C. § 1132(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"). The court will first address defendant Helena's Motion for Summary Judgment.

## SUMMARY JUDGMENT STANDARD

 Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim. *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. at 2512; *In Matter of Wildman*, 859 F.2d 553, 557 (7th Cir. 1988); *Klein v. Ryan*, 847 F.2d 368, 374 (7th Cir.1988); *Valentine v. Joliet Township*

---

motion for leave to file an amended complaint. However, that claim survives only as to defendant Helena, as Named Long–Term Disability Plan ("the Plan") and defendant UNUM Life Insurance Company of America ("UNUM").

Helena Chemical Company, as named Plan Administrator is dismissed from this action by virtue of the court's ruling on Helena's motion for summary judgment, as set forth in this Order.

*High Sch. Dist. No. 204,* 802 F.2d 981, 986 (7th Cir.1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc.,* 957 F.2d 317, 322 (7th Cir.1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. *Goka v. Bobbitt,* 862 F.2d 646, 649 (7th Cir.1988); *Guenin v. Sendra Corp.,* 700 F.Supp. 973, 974 (N.D.Ind.1988); *Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir.), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. *Anderson,* 477 U.S. at 249–51, 106 S.Ct. at 2511. However, "[i]t is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained" and in such cases summary judgment is appropriate. *Mason v. Continental Illinois Nat'l Bank,* 704 F.2d 361, 367 (7th Cir.1983).

Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Id.* The issue of fact must be genuine. Fed.R.Civ.P. 56(c), (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some meta-

physical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356; *First Nat'l Bank of Cicero v. Lewco Sec. Corp.,* 860 F.2d 1407, 1411 (7th Cir. 1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2512.

## DISCUSSION

### 1. Helena Chemical Company's Motion for Summary Judgment

As explained above, Helena's motion for summary judgment originally took the form of a motion to dismiss. While it was still designated a motion to dismiss, the parties filed a total of five briefs arguing various issues. After the court determined that Helena's motion was properly one for summary judgment and should be presented accordingly, the parties filed three more briefs. While the court has considered all eight briefs (just over 100 pages not including attachments), the dispositive issue is, simply, whether or not Helena is a proper party to plaintiff's ERISA action. Helena claims that it is not a proper party, despite its designation as named Plan Administrator, since the company has no administrative discretion over the plan and does not fit the statutory definition of a fiduciary. Plaintiff argues that Helena does fit the definition of a fiduciary and is therefore a proper party along with the Plan itself and UNUM. Plaintiff relies predominately on the recent U.S. Supreme Court case of *Varity Corporation v. Howe,* —— U.S. ——, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) in support of his argument. However, while *Varity* does address the issue of when an employer acts as a fiduciary under ERISA, the court does not believe that the case carries the day for the plaintiff.

ERISA states that "... a person is a fiduciary with respect to a plan to the

extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets ... or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). "ERISA makes the existence of discretion a sine qua non of fiduciary status." *Pohl v. National Benefits Consultants, Inc.*, 956 F.2d 126, 129 (7th Cir.1992). In *Pohl*, the Seventh Circuit held that a plan administrator whose "function under the plan was clerical, mechanical, [and] ministerial" did not have discretion over plan administration or management and therefore was not a fiduciary. *Id.* The Department of Labor Regulations state that an entity that performs "purely ministerial functions ... within a framework of policies, interpretations, rules, practices and procedures made by other persons is not a fiduciary." 29 C.F.R. § 2509.75–8 D–2. Finally, as Helena points out, an employer does not automatically become a fiduciary merely because it establishes a benefits plan for its employees, if in fact that employer has no discretionary control over the management of the plan. *Senn v. United Dominion Indus., Inc.*, 951 F.2d 806 (7th Cir.1992), cert. denied, 509 U.S. 903, 113 S.Ct. 2992, 125 L.Ed.2d 687 (1993); *Fletcher v. Kroger Co.*, 942 F.2d 1137 (7th Cir.1991).

In the present case, Helena argues that the only functions it performed with respect to the Plan were ministerial in nature. As evidence of this fact, Helena presents affidavits from two former employees. One, Julie Huckaby, states that she "was the Benefits Coordinator at Helena from April 1993 to February 1994." Helena's Supplemental Memorandum, Exh. A, Affidavit of Huckaby, ¶ 1. Huckaby further states that at the time of plaintiff's claim, she and Andrea Ragsdale were the only two Helena employees who performed any duties relating to the Plan. *Id.*, ¶ 2. Huckaby claims that her "only functions with regard to the Plan consisted of executing enrollment forms for employees when they signed on for long-term disability insurance and paying the monthly premiums to UNUM.... On rare occasions I would send out claims forms to employees." *Id.*,

¶ 3. Finally, according to Huckaby, neither she nor any other Helena employee "participated in any way in the ... claims procedure," nor did they ever make "any decisions about an employee with regard to the Plan." *Id.*, ¶¶ 4 and 5.

Andrea Ragsdale, who was employed as Supervisor of Employee Relations for Helena during the relevant period, makes similar statements in her affidavit. She states that her "functions with respect to the Plan included disseminating information to employees about their benefits under the Plan." Helena's Supplemental Memorandum, Exh. B, Affidavit of Ragsdale, ¶ 2. She also states that she would provide UNUM with certain personnel information pertaining to employees who applied for disability benefits under the Plan, that she sent the plaintiff a claim form and forwarded that form to UNUM after it was completed, and that neither she nor any other Helena employee was involved in any decision to grant or deny benefits under the Plan. Id., ¶¶ 3–8.

Helena also presents the affidavit of Patricia Allen, an Assistant Secretary for UNUM, who states that "UNUM has its own policies, guidelines and rules regarding the processing of claims and determining benefit eligibility." Helena's Supplemental Memorandum, Exh. C, Affidavit of Allen, ¶ 3. She also states that "[i]n accordance with the Plan, UNUM made all benefit decisions related to the Plan, including eligibility determinations pursuant to the foregoing policies, guidelines and rules." *Id.*, ¶ 4.

Helena states that the Plan language establishes that Helena's duties under the Plan are only ministerial. Helena also argues that the language in the Plan itself makes clear that UNUM, not Helena, is responsible for handling all disability claims made under the Plan. Therefore, Helena is not a fiduciary, having no discretionary authority over the Plan. Indeed, the Plan states that UNUM will provide "certificates" to Helena for distribution to each insured employee. Complaint, Exh. A, L–GPP–1 and L.GPP.6.1. In addition, Helena is required by the policy to provide UNUM with "information relative to employees" covered by the Plan and "any

other information about this policy that may be reasonably required." *Id.* The Plan also makes clear that UNUM, and not Helena, is responsible for determining whether or not an employee is entitled to benefits under the Plan. Insureds are required to file claims with UNUM and provide UNUM with the required degree of proof of that claim. *Id.,* L–GPP–2 and L.GPP.6.2–6.3. Plaintiff does not point to any language in the Plan that even implies that Helena has any sort of discretionary authority over the administration of the Plan or eligibility determinations.

Helena also cites a portion of the Department of Labor regulations to support its argument that its functions under the Plan are merely ministerial. The regulations list eleven administrative functions that do not bestow fiduciary status upon the entity that performs those functions, so long as they are performed "within a framework of policies, interpretations, rules, practices and procedures made by other persons." 29 C.F.R. § 2509.75–8, D–2. Those functions include:

(1) Application of rules determining eligibility for participation or benefits;

(2) Calculation of services and compensation credits for benefits;

(3) Preparation of employee communications material;

(4) Maintenance of participants' service and employment records;

(5) Preparation of reports required by government agencies;

(6) Calculation of benefits;

(7) Orientation of new participants and advising participants of their rights and options under the plan;

(8) Collection of contributions and application of contributions as provided in the plan;

(9) Preparation of reports concerning participants' benefits;

(10) Processing of claims; and

(11) Making recommendations to others for decisions with respect to plan administration.

*Id.*

In the present case, based on the affidavits of Allen and Ragsdale, it is clear that the functions performed by Helena employees with regard to the Plan fell into one or more of the categories listed above. In addition, the Plan contract specifically states that "[t]his policy is the complete contract" and that "[o]nly an officer or a registrar of [UNUM] can approve a change." *Id.,* L–GPP–1 and L.GPP.6.1. Thus, the terms of the insurance policy itself set forth the "framework of policies, interpretations, rules, practices and procedures" under which the Plan operates. In support of its contention that it the company was not an ERISA fiduciary because it did not exercise the requisite amount of discretionary control or authority over the Plan, Helena also cites, in a Notice of Supplemental Authority filed on June 12, 1996, the recent U.S. Supreme Court case of *Lockheed Corporation v. Spink,* —— U.S. ——, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996). In that case, the Supreme Court held that "when employers or other plan sponsors adopt, modify, or terminate pension plans, they do not act as fiduciaries ... but are analogous to settlors of a trust." *Id.,* at ——, 116 S.Ct. at 1786.

For his part, Bollenbacher argues that the recent *Varity* case is controlling. He argues that as a result of a conversation he had with a Helena employee wherein that employee discussed Bollenbacher's alleged ineligibility for benefits under the Plan, Helena became a fiduciary. However, the court rejects Bollenbacher's broad reading of the holding in *Varity.* In that case, Varity Corporation transferred divisions of one of its failing subsidiaries, Massey–Ferguson, Inc., to a separately incorporated subsidiary known as Massey Combines. After that restructuring decision was made, Varity held a meeting with its employees to attempt to persuade them to switch employers and benefit plans, which in turn would relieve Massey–Ferguson from its obligation to provide benefits to those employees. At the meeting in question, Varity representatives told the Massey–Ferguson employees that the financial outlook for Massey Combines was promising, and that their employee benefits under the Massey Combines plan would be secure. However, such was not the case, as Varity officials knew. After only two years in business, Massey Combines was placed in receiv-

ership. The result was that thousands of employees lost benefits which they would have received had they not been enticed to switch plans. The U.S. Supreme court agreed with the district court's finding that Varity was acting as an ERISA plan administrator as well as an employer when it held that fateful meeting. The Court also agreed with the district court that Varity's actions constituted a breach of the company's fiduciary duty under ERISA.

■ In the present case, plaintiff argues that near the end of October of 1993 he "had a lengthy telephone conversation" with Helena Human Resources Director Kate Rampy, "wherein she repeatedly gave her opinion regarding interpretations under the Plan as well as eligibility determinations." Plaintiff's Response Brief, p. 5. According to the plaintiff, the representations made to him by Helena, through its agent Kate Rampy, were sufficient to establish that Helena was a fiduciary. In other words, plaintiff equates the conversation with Rampy with the employee meeting that took place in *Varity*. The court finds this argument unconvincing, as it involves an overly broad interpretation of *Varity* and also ignores crucial facts in that case. To begin with, Varity Corporation was admittedly an administrator of the ERISA plan in question in that case. The parties did not dispute, as they do in the present case, that the employer in *Varity* was a fiduciary under ERISA. The issue before the Supreme Court was not whether Varity became a fiduciary by virtue of the representations it made to employees at the benefits meeting, but whether it was acting in its capacity as administrator or only employer at the time of the meeting. The Court held that since the meeting was convened for the sole purpose of discussing benefit plans and to entice employees to switch plans, Varity was exercising sufficient discretionary authority or control over the management and administration of the plans, and therefore was acting in a fiduciary capacity.

The situation in *Varity* was dramatically different from what occurred in the present case. A transcript of the conversation between Bollenbacher and Rampy, which the plaintiff tape recorded, reveals that Rampy told Bollenbacher that he would not be entitled to disability insurance since he was no longer a Helena employee and no doctor had determined that he was disabled. Plaintiff's Response Brief, p. 6. Plaintiff presents other excerpts from the transcript which reveal that Rampy discussed with him the reasons why, in her opinion, he was not entitled to benefits under the Plan, and when disability coverage would begin if one were qualified for such coverage. Id., pp. 6–9. Plaintiff then concludes that "[i]n light of *Varity*, an employer that makes representations about the meaning and terms of a plan performs an administrative act. Administrative acts are fiduciary acts under ERISA and *Varity*." *Id.*, p. 10. As explained above, this is an improper interpretation of *Varity*. The Supreme Court did not say that any time an employer makes representations regarding a benefit plan it constitutes an administrative act and imposes fiduciary status where none previously existed. Varity was already a plan administrator. The Court simply found that "the factual findings ... adequately support the District Court's holding that Varity was exercising 'discretionary authority' respecting the plan's 'management' or 'administration' when it made these misrepresentations...." *Varity*, —— U.S. at ——, 116 S.Ct. at 1071. As to the opinions or representations made to Bollenbacher by Rampy, they fall more properly within those specific functions which the regulations specifically hold are *not* fiduciary in nature. That is, Rampy's conversation with Bollenbacher constituted nothing more than a discussion regarding the "application of rules determining eligibility for participation or benefits" or "advising participants of their rights and options under the plan." Plaintiff simply goes too far when he argues, for example, that Rampy's statements that he was not eligible for benefits because he was not disabled constituted a rejection of his disability claim by Helena even before he filed it. On the contrary, the court finds that Helena Chemical Company performed only ministerial functions with regards to the Plan and did not exercise discretionary authority over the management or administration of the Plan so as to make Helena a fiduciary.

For the foregoing reasons, defendant Helena Chemical Company's Motion for Summary Judgment on the issue of the company's status as an ERISA fiduciary is GRANTED.

## 2. Plaintiff's Motion for Leave to File a Second Amended Complaint

██ In his proposed second amended complaint, plaintiff attempts to bring an action to recover personally against Helena. Again, he bases his claim on the *Varity* case. Plaintiff states that in *Varity* the Supreme Court held that an individual who is injured by an ERISA administrator's breach of its fiduciary duty can bring an action for individualized relief against that fiduciary. Memorandum in Support of Plaintiff's Motion for Leave to File a Second Amended Complaint, p. 3. In fact, the Court wrote that "[w]e granted certiorari in this case primarily because ... [s]ome Courts of Appeals have held that [§ 502(a)(3) ], when applied to a claim of breach of fiduciary obligation, does not authorize awards of relief to individuals, but instead only authorizes suits to obtain relief for the *plan* (as, for example, when a beneficiary sues in a representative capacity, seeking to compel a dishonest fiduciary to return embezzled funds to the plan)." *Varity,* —— U.S. at ——, 116 S.Ct. at 1069 (italics in original) (citations omitted). A divided Supreme Court held that a person could bring an individual action against an ERISA fiduciary.

However, since this court has already decided that Helena was not a plan administrator and therefore could not act as an ERISA fiduciary, there is no basis for plaintiff's proposed claim. Helena obviously could not breach a duty it did not have. In *Varity,* there was no dispute, as there is in this case, as to whether Varity Corporation was an ERISA fiduciary. The issue was whether or not the corporation was acting in that capacity at the time it held a meeting with employees to discuss their benefit package. Consequently, for the reasons set forth above, plaintiff's Motion for Leave to File a Second Amended Complaint is DENIED.

## 3. Defendant's Motion for Reconsideration of the Court's Order Granting Plaintiff's Motion for Leave to File an Amended Complaint

As previously mentioned, Bollenbacher filed a Motion for Leave to File an Amended Complaint on February 1, 1996, which was granted by Magistrate Judge Cosbey. The amended complaint contains five counts. Count I is Bollenbacher's original ERISA claim against the defendants for the alleged wrongful denial of long-term disability benefits. In Count II Bollenbacher asserts a claim against Helena Chemical Company for an alleged violation of the Americans With Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"). Count III contains a claim against Helena for violation of 29 U.S.C. § 1140 (ERISA § 510) for allegedly interfering with Bollenbacher's right to receive long-term disability benefits under the Plan. Count IV is a state law claim against Helena for alleged retaliation against Bollenbacher as a result of his having filed a Workers' Compensation Act claim under I.C. 22–3–2–15 *et seq.* Finally, Count V is a claim against UNUM for allegedly failing to follow statutory procedure in denying Bollenbacher's claim. Only Counts II, III, and IV are the subject of Helena's motion for reconsideration, and the company raises various defenses to each Count.

### STANDARD OF REVIEW

██ Federal Rule 15(a) permits a plaintiff to amend his complaint as a matter of right before a responsive pleading has been served or within twenty (20) days after the complaint is served if no responsive pleading is permitted. Fed.R.Civ.P. 15(a). Otherwise, a plaintiff may amend by leave of court or by written consent of the adverse party. *Id.* It is within the discretion of the district court to grant or deny leave to amend. *Campbell v. Ingersoll Mill. Mach. Co.,* 893 F.2d 925, 927 (7th Cir.), *cert. denied,* 498 U.S. 844, 111 S.Ct. 127, 112 L.Ed.2d 95 (1990). While leave to amend is liberally granted, it should not be granted when the newly asserted claims are futile or where the proposed amendment is interposed for dilatory motive or in bad faith. *Villa v. City of*

*Chicago,* 924 F.2d 629, 632 (7th Cir.1991) (citing *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

■ An amendment is considered futile if the claim could not withstand a motion to dismiss for failure to state a claim upon which relief may be granted. *Bower v. Jones,* 978 F.2d 1004, 1008 (7th Cir.1992). An amendment is also considered futile if the statute of limitations for the cause of action asserted therein has expired. *Mitchell v. Collagen Corp.,* 67 F.3d 1268, 1273–74 (7th Cir.1995).

### A. Count II

■ In Count II, Bollenbacher alleges that Helena terminated him because of his disability, in violation of the ADA. Helena argues that this claim is futile because Bollenbacher does not fit the statutory definition of a "qualified individual with a disability." It is Helena's position that since plaintiff asserts in Count I that he is fully disabled and therefore entitled to long-term disability benefits under the Plan, he cannot simultaneously claim that he is a "qualified individual with a disability" who can perform the duties of his job with reasonable accommodation. Indeed, in order to state a prima facie case of discrimination under the ADA, a plaintiff must establish that he or she is a qualified individual with a disability. 42 U.S.C. § 12112(a). The statute defines that phrase to mean:

> [A]n individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.

42 U.S.C. § 12111(8). Helena claims that Bollenbacher cannot claim that he is "disabled from any position," Amended Complaint, ¶ 48, and also that he is a qualified individual with a disability, Amended Complaint, ¶ 51. Bollenbacher responds that Federal Rule 8(a) and (e) permits a party to seek alternative forms of relief and to assert separate or alternative claims regardless of consistency. Helena argues that Bollenbacher's ADA claim and his ERISA claim (Count I) are not merely alternative claims or inconsistent claims, but rather, are mutually exclu-

sive. For that reason, Helena argues, plaintiff's amendment with regard to his ADA claim should be disallowed.

In support of his position, Bollenbacher cites the cases of *Overton v. Reilly,* 977 F.2d 1190 (7th Cir.1992) and *Smith v. Dovenmuehle Mortgage, Inc.,* 859 F.Supp. 1138 (N.D.Ill.1994). In *Overton,* the Seventh Circuit held that a ruling by the Social Security Administration (SSA) that the plaintiff in that case was disabled was not inconsistent with plaintiff's claim that he was a "qualified individual with a disability" under the ADA. *Overton,* 977 F.2d at 1196. In *Smith,* the district court, citing *Overton,* held that "the SSA's decision to award benefits is not synonymous with a determination that plaintiff is not a 'qualified individual' under the ADA." *Smith,* 859 F.Supp. at 1141. On their face, these holdings would appear to support Bollenbacher's claim that he should be permitted to claim total disability and still pursue his alleged ADA claim.

Helena, however, points to factual differences between *Overton* and *Smith* and the present case, and then goes on to cite a host of cases holding that a plaintiff should be judicially estopped from claiming total disability and later attempting to assert an ADA claim. As to the factual differences, Helena correctly points out that the plaintiff in *Overton* never stated to the SSA that he was totally disabled. In fact, Overton continued working while receiving disability payments, which were originally granted on a nine-month trial basis and were made permanent when Overton was later terminated. *Overton,* 977 F.2d at 1192. In contrast, Bollenbacher did represent that he was totally disabled, and even had a doctor's written determination to that effect. In his Employee Statement, which was part of his application for disability benefits submitted to UNUM, Bollenbacher stated that "I am still on high levels of pain medication, therapy and average 6 hours per day in whirlpool baths. I am in constant pain with no activity. I would assess my *total disability* to have begun on January 15, 1993, although I continued to do the clerical job albeit in constant pain and discomfort.... [T]he sole cause for my back and leg problems ... is the

incident which occurred on May 4, 1991. My physical health has continued to deteriorate since that date. I *have not returned to any employment since my layoff* and the Indiana Department of Employment and Training Services considers me totally disabled. I have applied for Social Security Disability." Defendant's Opposition to Plaintiff's Motion for Leave to File an Amended Complaint, Exh. B (italics added). His physician wrote that Bollenbacher was "totally disabled since 9/93. . . ." *Id.*, Exh. D.

In the *Smith* case, the plaintiff claimed that he was wrongfully discharged in violation of the ADA because he was suffering from AIDS. He represented to the SSA that his deteriorating health condition had forced him to quit working altogether, and he was granted disability benefits based on that representation. Sometime later, plaintiff's health improved enough that he was able to resume working full-time at another job. The district court reasoned that the fact that the plaintiff's health had improved constituted "a plausible explanation for the divergence between his representation to the SSA and the arguments he is making now." *Smith*, 859 F.Supp. at 1142. Again, argues Helena, the facts of the present case are quite different since Bollenbacher claimed to be totally disabled from the time of his termination and also states that he has not worked since. Therefore, claims Helena, plaintiff clearly does not fit the definition of a "qualified individual with a disability," which is defined as a person "with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

Helena argues that Bollenbacher should be judicially estopped from asserting contrary positions. Helena cites numerous cases to support its contention that Bollenbacher is attempting to present mutually exclusive claims in this lawsuit, and that a litigant who claimed total disability in one proceeding cannot then seek redress in the courts for an alleged violation of the ADA based on the same set of facts. Just a few of the cases cited by Helena include: *McNemar v. Disney Stores, Inc.*, 1995 WL 390051 (E.D.Pa.

June 30, 1995) (plaintiff and physician represented to SSA under penalty of perjury that plaintiff was unable to work, estopping plaintiff from arguing an ADA claim); *Harden v. Delta Air Lines*, 900 F.Supp. 493, 497 (S.D.Ga.1995) ("[t]his Court . . . [finds] it 'incredible' that a plaintiff would claim that he was discriminated against by his employer for failing to make reasonable accommodations while representing to various entities that he was unable to work"); *Reigel v. Kaiser Foundation Health Plan of N.C.*, 859 F.Supp. 963 (E.D.N.C.1994) (physician who, in order to obtain disability insurance benefits, claimed shoulder injury rendered her totally disabled could not then demonstrate that she was qualified to perform functions of her job); *August v. Offices Unlimited, Inc.*, 981 F.2d 576 (1st Cir.1992) (plaintiff who claimed he was totally disabled on disability benefits application form was precluded from claiming he was qualified handicapped person); *Brown v. Nat'l Railroad Corp.*, 1990 WL 119558 (N.D.Ill. August 14, 1990) (plaintiff who claimed total disability in order to obtain disability benefits was judicially estopped from asserting ADA claim); and *Muellner v. Mars, Inc.*, 714 F.Supp. 351 (N.D.Ill.1989) (same). As stated previously, these cases are only some of the cases cited by Helena in support of its position.

The cases cited above, and the others cited by Helena in the company's various briefs, are sufficiently persuasive to convince this court that a plaintiff who claims to be totally disabled in one proceeding should be estopped from asserting an ADA claim in a subsequent suit based on the same facts. However, if any more convincing is necessary, it appears to come in the case of *Miller v. U.S. Bancorp*, 926 F.Supp. 994 (D.Or. 1996), a case presented by Helena in a Notice of Supplemental Authority filed on June 12, 1996, as the court was preparing this Order. In *Miller*, the district court in Oregon faced facts virtually identical to those in the present case. The district judge specifically discussed the *Overton* and *Smith* cases, on which that plaintiff had also relied in support of her position that her claim of total disability did not prevent her from asserting an ADA claim. The Oregon court arrived at the same conclusion as this court—that the hold-

ings of *Smith* and *Overton* do not apply were a litigant claims total disability and then attempts to bring an ADA claim. Citing many of the same cases cited by Helena in its briefs, the Oregon court held that the plaintiff could not have it both ways. The court wrote: "I conclude, as did the court in *Reigel,* that 'plaintiff in the case sub judice cannot speak out of both sides of her mouth with equal vigor and credibility.'" *Miller,* 926 F.Supp. at 1000 (quoting *Reigel,* 859 F.Supp. at 970). This court is concerned about the inequity of permitting a plaintiff to claim that he is totally disabled in order to receive disability benefits while also permitting him to allege that he is a "qualified individual with a disability" in order to bring an ADA claim. Other courts have recognized this problem. Even the court in *Smith,* one of the cases relied on by Bollenbacher, acknowledged that where an individual claimed to be totally disabled and did not return to work and a later date, should be estopped from asserting that he is a "qualified individual with a disability." The court wrote:

> [T]he cases relied upon by defendant ... are inapposite. In both those cases, the plaintiffs first argued to the SSA that they were disabled and unable to perform their jobs in order to obtain social security disability payments. They then turned around and argued to the court that they were entitled to back pay and reinstatement to those very same jobs because they were not, and had never been, disabled. As both ... courts recognized, to deny summary judgment in those circumstances would be 'to countenance the very intentional self-contradiction and abuse of the courts which judicial estoppel was designed to prevent.'

*Smith,* 859 F.Supp. at 1142 (quoting *Muellner,* 714 F.Supp. at 359).

For the foregoing reasons, Helena's motion to reconsider the court's order granting plaintiff leave to file an amended complaint is granted as to Count II of said amended complaint, and Bollenbacher will not be permitted to assert a claim against Helena alleging a violation of the ADA.

## B. Count III

In Count III of his amended complaint, Bollenbacher asserts a claim against Helena Chemical Company for allegedly interfering with his rights to obtain ERISA benefits, all in violation of 29 U.S.C. § 1140 (ERISA § 510). Section 510 provides as follows:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan ... It shall be unlawful for any person to discharge, file, suspend, expel, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceeding relating to this chapter.

Bollenbacher alleges that Helena violated § 1140 because the company "laid off and/or terminated Bollenbacher for the purpose of interfering with the attainment of benefits under the Plan." Amended Complaint, ¶ 59. Helena claims that Bollenbacher cannot maintain this claim since the conduct which he alleges constitutes a violation of the statute occurred after his employment was terminated and that only adverse action that occurs during employment is prohibited by the statute. Helena also argues that this claim is barred by the statute of limitations, and that Bollenbacher fails to state a prima facie case under § 1140.

Helena cites the case of *Rush v. McDonald's Corporation,* 966 F.2d 1104 (7th Cir.1992) in support of its contention that only conduct which occurs during the existence of an employer/employee relationship is covered under § 510. In *Rush,* the Seventh Circuit wrote that "'a fundamental prerequisite to a § 510 action is an allegation that the employer-employee relationship, and not merely the pension plan, was changed in some discriminatory or wrongful way.'" *Rush,* 966 F.2d at 1121 (quoting *Deeming v. American Standard, Inc.,* 905 F.2d 1124, 1127 (7th Cir.1990)). Helena also cites the

case of *Teumer v. General Motors Corporation,* 34 F.3d 542 (7th Cir.1994) in support of its contention that § 510 applies only to conduct taken prior to termination of the employment relationship. In *Teumer,* the court held that GM's allegedly intentional mischaracterization of a plant closing as a plant "consolidation," made in order to deny certain benefits to certain employees, was not a violation of § 510 since the "alleged wrongful interference was not a change in [plaintiff's] employment position." *Teumer,* 34 F.3d at 545. These cases hold, argues Helena, that where there is no longer an employee/employer relationship that can be "changed in some discriminatory or wrongful way" there can be no § 510 violation. Therefore, says Helena, since Bollenbacher's claims of interference include acts taken by Helena employee Kate Rampy after the plaintiff had been laid off or terminated, § 510 does not apply.

While it is true that some of Bollenbacher's evidence in support of his § 510 claim includes statements made by Rampy to the plaintiff or to UNUM after plaintiff's employment with Helena ended, that fact in and of itself would not bar his § 510 claim. As stated previously, Bollenbacher alleged in his amended complaint that Helena terminated his employment in order to interfere with his ability to obtain benefits. Nothing could more clearly constitute a wrongful or discriminatory change in an employee/employer relationship than such a termination, assuming it was in fact done for the purpose alleged. Helena argues that Bollenbacher's allegations with regards to his § 510 claim all involve conduct that occurred after his employment ended. However, plaintiff's clear allegation of wrongful termination in paragraph 59 of his amended complaint obviously fits within the language of the statute and by its very nature could not occur after employment ended.

■ Helena's other arguments in opposition to Bollenbacher's § 510 claim are more firmly grounded. Helena argues that the claim is barred by the applicable statute of limitations. Even Bollenbacher admits that "ERISA itself provides no statute of limitations for a § 1140 cause of action. Instead, it requires a plaintiff to rely on the most analo-

gous state statute of limitations from the state in which the plaintiff brings the claim." Plaintiff's Response to Helena's Motion to Reconsider, p. 13 (citations omitted). Bollenbacher then argues that the Indiana ten year statute of limitations for actions involving contracts in writing should apply to the present case. In support of his contention, plaintiff cites the case of *Spearman v. General Motors Corp.,* 880 F.Supp. 617 (S.D.Ind. 1994). In that case, GM argued that Indiana's two-year statute of limitations governing employment contracts not in writing should apply, while Spearman argued that the state's ten-year limitations period governing contracts that are in writing was more applicable. Chief Judge Barker agreed with plaintiff that the ten-year statute of limitations period was more applicable to an ERISA claim under § 1140. The court also stated that using the longer limitations period helped further the public policy behind ERISA by allowing time for "beneficiaries of plans to discover mistakes and irregularities and enforce their rights if necessary." *Spearman,* 880 F.Supp. at 621.

However, Helena counters Bollenbacher's argument by again raising the *Teumer* case. There, the Seventh Circuit, discussing a § 510 ERISA claim brought in Illinois, held that the state's retaliatory discharge tort was the most analogous to a § 510 cause of action and therefore the tort's two-year statute of limitations was applicable to the ERISA action. While Helena concedes that the *Teumer* court was reviewing Illinois statutes rather than Indiana statutes, the company argues that the Seventh Circuit's reasoning in that case "commands that the retaliatory discharge tort statute of limitations be adopted in all courts within the Seventh Circuit." Helena's Reply Memorandum in Support of its Motion to Reconsider, p. 10. Consequently, argues Helena, since Indiana likewise applies a two-year tort statute of limitations for retaliatory discharge claims, that is the proper period to apply to Bollenbacher's claim. *Id.* (citing I.C. § 34–1–2–2(1) and *Haas Carriage, Inc. v. Berna,* 651 N.E.2d 284 (Ind.App.1995)). Furthermore, Helena argues, the *Spearman* case was decided more than two months before the Seventh

Circuit decision in *Teumer,* which the company contends makes the holding in *Spearman* questionable. While the issue of which Indiana statute of limitations applies to § 510 actions remains undecided, this court agrees with Helena's contention that the Seventh Circuit decision in *Teumer,* while admittedly not addressing Indiana law, is more persuasive than the *Spearman* decision. This is especially true in light of the fact that Indiana's statute of limitations for a retaliatory discharge claim, the same type of claim the Seventh Circuit in *Teumer* found analogous to a § 510 action, also has a two-year statute of limitations. For those reasons, the court will apply a two-year statute of limitations to Bollenbacher's § 510 claim.

 The next issue to resolve is whether or not Bollenbacher filed his suit within the applicable two-year statute of limitations period. Bollenbacher properly points out that Fed.R.Civ.P. 15(c)(2) states that "an amendment of a pleading relates back to the date of the original pleading when ... (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Bollenbacher filed his original complaint on October 16, 1995. Helena argues that since Bollenbacher was laid off from his data entry position on September 28, 1993, the statute of limitations for a § 510 action expired on September 28, 1995, approximately two weeks before Bollenbacher filed his original complaint.

Bollenbacher counters that he "was not informed that he was *ultimately* terminated until *after* October 16, 1993 when he received the Release agreement from Helena" (italics added, underlining in original). Plaintiff's Response to Helena's Motion for Reconsideration, p. 16. In support of this allegation, Bollenbacher submitted an affidavit, attached as Exhibit A to his response brief, wherein he makes the following relevant statements:

2. I received a Release and Severance Agreement from Helena Chemical Company during the fourth week of October 1993, on or about October 26, 1993. I am certain that I received the Release and Severance Agreement after October 16, 1993.

3. I did not know that Helena Chemical Company intended to terminate my employment with them until I received the Release and Severance Agreement from Helena on or about October 26, 1993, and after October 16, 1993.

4. Prior to the time I received the Release and Severance Agreement, I believed I had the opportunity to be recalled by Helena Chemical Company.

Helena argues that Bollenbacher's contention that he did not know he was laid off or terminated until after October 16, 1993, in which case his § 510 action would be timely, is disingenuous. Helena points to the fact that Bollenbacher himself admitted that "[o]n or about September 28, 1993, Helena Chemical representatives told [me] that [I] was being laid off...." Complaint, ¶ 16; Amended Complaint, ¶ 23. Thus, argues Helena, Bollenbacher cannot argue that he did not actually know his employment was being terminated until he received the Release Agreement, which he claims he did not receive until October 26, 1993. Also, Bollenbacher's statement that he did not know that he was "ultimately" terminated until he received the Release Agreement indicates that, at the very least, he had received some notice of some adverse action regarding his employment prior to receiving that Release.

Bollenbacher cites the *Teumer* case in support of his position. In *Teumer,* the Seventh Circuit held that a cause of action under § 510 accrues when the layoff occurs and the employee finds out about it. *Teumer,* 34 F.3d at 550. Bollenbacher is apparently attempting to argue that he did not find out about his termination, and/or that Helena did not decide to terminate him or lay him off, until he received the Release Agreement about one month after he admits he was told he was being laid off as a result of his refusal to take a position at another Helena location. This argument stretches credulity. As stated previously, Bollenbacher has expressly stated that he was told of his lay off on September 28, 1993. He never worked another day at Helena after September 29, 1993, and he presents no evidence, other than his own affidavit, that Helena ever represented to him that he was subject to recall.

Furthermore, Helena argues, the *Teumer* case, when examined more closely, actually mitigates against Bollenbacher's contention that his § 510 cause of action did not accrue until he received the Release Agreement. In *Teumer*, the Seventh Circuit expressly rejected the plaintiff's argument that his § 510 cause of action did not accrue until "he ascertained the alleged unlawful nature of the layoff." *Teumer*, 34 F.3d at 550. The court held that it was the layoff itself that constituted Mr. Teumer's injury at the hands of GM, and that his cause of action accrued at that point. *Id.* The court wrote that "Teumer's § 510 claim challenging the legality of his layoff accrued in 1986 when the layoff occurred and he found out about it...." Helena also cites the case of *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129 (7th Cir.1992), which was cited approvingly in the *Teumer* case. In *Tolle*, the plaintiff was asserting, *inter alia*, a § 510 action and the Seventh Circuit held that "Tolle's claim arose on either September 19, 1984, or September 24, 1984, when [the defendant] decided to terminate Tolle and when [the defendant] communicated this intent to Tolle." *Tolle*, 977 F.2d at 1138. Likewise, it seems quite clear that Bollenbacher's § 510 claim accrued when Helena representatives told him, on September 28, 1993, that he was being laid off. As a result, his § 510 is barred by the expiration of the applicable statute of limitations.

■■■ Finally, Helena also argues that even if the applicable statute of limitations did not bar Bollenbacher's claim, it would fail nonetheless since he fails to make out a prima facie case under § 510. "In order to make out a prima facie case under section 510, the plaintiff must show that he (1) belongs to the protected class; (2) was qualified for his job position; and (3) was discharged or denied employment under circumstances that provide some basis for believing that the prohibited intent to retaliate was present." *Grottkau v. Sky Climber, Inc.*, 79 F.3d 70 (7th Cir.1996) (citations omitted). Helena argues that in light of Bollenbacher's repeated assertions that he was totally disabled from September 28, 1993 (or even before), he cannot establish that he was "qualified for his job position" and so he fails to establish a prima facie case of a violation of § 510. The

issue of Bollenbacher's disability was addressed thoroughly earlier in this Order and there is no reason to reiterate those argument here. However, in light of the court's decision disallowing Bollenbacher's ADA claim on the basis that it is impermissibly inconsistent with his prior assertions of total disability, the court agrees with Helena's position that the same reasoning applies here, and that Bollenbacher cannot establish a prima facie case under § 510 since he cannot prove that he was qualified for his position. For all of the foregoing reasons, Helena's motion for reconsideration as to Count III of Bollenbacher's amended complaint is granted.

### 4. Count IV—State Law Retaliation Claim

■■■ Bollenbacher also asserts in his amended complaint a state law claim against Helena for retaliatory discharge. He alleges that the company terminated him after learning that he had filed a worker's compensation claim. Helena asserts the same statute of limitations defense to this claim as it did with regard to Count III. In this instance, the parties do not dispute that the statute of limitations for the tort of retaliatory discharge in Indiana is two years. *Scott v. Union Tank Car Co.*, 402 N.E.2d 992 (Ind. App.1980).

Bollenbacher makes the same argument in Count IV that he made in Count III—that his cause of action did not accrue until late in October of 1993. As the court has already discussed in detail its reasons for rejecting that argument, they need not be repeated here. The court finds that Bollenbacher's state law claim for retaliatory discharge is time barred. Consequently, Helena's motion for reconsideration as to Count IV is granted.

### UNUM's MOTION FOR CLARIFICATION

As mentioned at the outset of this Order, defendant UNUM filed a Motion for Clarification on February 21, 1996, seeking to clarify its obligation to answer or otherwise respond to plaintiff's amended complaint. On

that same date, Magistrate Judge Cosbey granted the motion and ordered that UNUM's obligation to answer or otherwise respond to the amended complaint would be stayed pending the resolution of defendant Helena's Motion to Reconsider the order granting plaintiff leave to file his amended complaint.

In Count V of his amended complaint, Bollenbacher asserts a claim against UNUM for allegedly violating the ERISA notice requirements for denial of benefits. Since this allegation is separate from the allegations in Counts I through IV, and since this court's analysis of the facts and legal issues relevant to Counts I through IV do not pertain to Count V, further briefing is necessary in order for any motion for reconsideration regarding Count V to be properly before this court. As Helena was previously granted leave to file a motion for reconsideration of the court's Order granting plaintiff leave to file an amended complaint, UNUM will now be afforded the same opportunity. Consequently, UNUM is hereby granted permission to file a motion for reconsideration of the court's Order granting plaintiff leave to file an amended complaint, in order to challenge Bollenbacher's amended complaint with regard to Count V only. UMUN should file said motion and any supporting documentation within thirty (30) days of receipt of this Order. Bollenbacher may file a response within fifteen (15) days after service of UNUM's motion. UNUM may then file a reply, if necessary, within fifteen (15) days of service of Bollenbacher's response.

### CONCLUSION

As a result of the foregoing, defendant Helena Chemical Company's Motion for Summary Judgment is GRANTED; defendant Helena's Motion for Reconsideration of this court's order granting plaintiff leave to file an amended complaint is GRANTED as to Counts II, III and IV of the amended complaint and DENIED as to Count I; Plaintiff's Motion for Leave to File a Second Amended Complaint is DENIED; and UNUM is hereby granted permission to file a Motion for Reconsideration of the court's previous Order granting plaintiff's request to file an amended complaint, as to Count V of that amended complaint only, to which plaintiff may file a response. UNUM's motion shall be filed within thirty (30) days of the date of this Order; plaintiff's response shall be filed within fifteen (15) days after service of UNUM's motion; and UNUM's reply, if any, shall be filed within fifteen (15) days after receipt of plaintiff's response.