**Marvin O. ROSS, Plaintiff,**

v.

**INDIANA STATE TEACHER'S ASSOCIATION and Indiana State Teacher's Association Insurance Trust, Defendants.**

**No. 1:95 cv 245 AS.**

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Feb. 7, 1997.

Alan VerPlanck, James Fenton, Barrett and McNagny, Fort Wayne, IN, for Marvin O. Ross.

Wayne O. Adams, III, David D. Robinson, Johnson Smith Pence Densborn Wright and Heath, Indianapolis, IN, for Indiana State Teacher's Ass'n.

Howard E. Kochell, Michael A. Moffatt, Barnes and Thornburg, Indianapolis, IN, Richard J. Darko, Lowe Gray Steele and Hoffman, Indianapolis, IN, for Indiana State Teacher's Ass'n Ins. Trust.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

### I. Procedural History

Plaintiff Marvin O. Ross ("Ross") filed this action against the Indiana State Teacher's Association ("ISTA") and the Indiana State Teacher's Association Insurance Trust ("Trust") on July 27, 1995, alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* and the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, as well as several pendent state law claims. ISTA filed a motion for summary judgment on September 9, 1996, on all claims pending against it. The same day, the Trust filed a motion for summary judgment on the ADA claim against it, a motion for summary judgment on the pendent state law claims against it, and a motion for partial summary judgment on the ERISA claim against it. On October 9, 1996, Ross responded to the various motions, and conceded the motions for summary judgment filed by the Trust on the ADA and state law claim issues. On October 18, 1996, the Trust filed a reply to Ross's response, and on October 24, 1996, ISTA did likewise. On November 5, 1996, oral argument was held on the pending motions in South Bend, Indiana before this judge. As the issues have been fully briefed, this court is now ready to rule.

As a preliminary matter, ISTA has filed a motion to strike Ross's affidavit, attached to his appendix of evidentiary materials as appendix J. That motion is now denied. However, this court will give the affidavit only the weight it deserves, bearing in mind that one cannot by affidavit "effectively oppose a motion for summary judgment by contradicting his own deposition testimony." *Cherry v. American Tel. & Tel. Co.*, 47 F.3d 225, 232 (7th Cir.1995). Furthermore, to the extent that the affidavit characterizes the contents of letters already admitted into evidence, this court will rely on the letters, and not Ross's characterization thereof.

### II. Facts

Marvin O. Ross was hired by the Fort Wayne Education Association ("FWEA") in 1971 as its executive director. When the FWEA merged with the ISTA in 1972, Ross became an employee of the ISTA as the Uni–Serv Director for the Fort Wayne area, where he served until the events of this complaint. In 1958, Ross suffered an injury to his hip-thigh area, which caused him to walk with a cane, and required him to have several surgeries, both before and during his employment with ISTA.

In September, 1992, Ross traveled to the Mayo Clinic in Rochester, Minnesota, at which time his doctors there placed him on indefinite sick leave from his employment. In March, 1993, Ross qualified for, and began receiving, long term disability ("LTD") benefits from the Trust, and in July, 1993, Ross began receiving Social Security disability payments. In 1994, the Trust's third party administrator of the benefit plan, the Huttleston Group, requested that Ross submit to an

independent medical examination ("IME") to show that he continued to be totally disabled. After the IME, a three person panel at the Huttleston Group determined that Ross was not totally disabled and that his LTD benefits should be discontinued. The LTD benefits were discontinued as of October 31, 1994. Ross appealed that decision to the Board of Trustees of the Trust, which affirmed the Huttleston Group's decision in February 1995. The discontinuation of benefits forms Ross's ERISA claim.

During October, 1994, before his LTD benefits were discontinued on October 31, 1994, Ross made inquiries to ISTA through his own union, the Professional Staff Organization ("PSO"), about returning to work. The ISTA had previously filled his position in Ft. Wayne in September, 1993, after Ross was unable to return to it at that time. However, the ISTA offered Ross a position as UniServ Director in its Shelbyville, Indiana, office, and asked Ross what accommodations would be needed for Ross to assume the position. On October 28, 1994, the PSO representative sent a letter to ISTA with Ross's suggested accommodations. ISTA sent a response to the PSO representative on November 1, 1994, requesting that Ross have his doctor provide "a comprehensive statement of the medical restrictions on his ability to work." To the extent the accommodations requested by Ross in the October 28 letter were not recommended by his physician, the ISTA requested that Ross explain why such accommodations were necessary and reasonable. The PSO representative sent the ISTA a letter on November 3, 1994, stating that they would have Ross's doctor provide a statement, and requesting that the ISTA define the essential functions of Ross's job, for purposes of determining what accommodations were required. On November 9, the ISTA responded that all duties listed in the job description of a UniServ Director were essential functions. The November 9 letter further stated that ISTA would make necessary and reasonable accommodations at the Shelbyville office and would expect Ross to begin at the Shelbyville office on November 28, 1994. If Ross did not begin work in Shelbyville on November 28, ISTA would consider such as a notice of resignation and

would terminate the employment relationship. The same day, ISTA sent a letter to Ross, informing him that he had been assigned to the Shelbyville office, where he was to start on November 28, that ISTA would make all reasonable accommodations, and that if he did not start on November 28, ISTA would take that as a resignation.

On November 10, Dr. Philip Johnson, Ross's personal physician, sent a letter to ISTA which stated that he did not believe that Ross should return to work, but which listed 16 accommodations, all of which would be required for Ross to return to work without placing him at risk of injury. On November 18, 1994, ISTA responded to Dr. Johnson's list of accommodations to the PSO representative, stating that ISTA could accommodate Ross in 15 of the requested areas, but could not assure Ross that all meetings would be held in the UniServ office. On November 21, ISTA received a letter from Ross, dated November 16, 1994, in which Ross stated he would report to the Shelbyville office on November 28, 1994 "as I have no intention of being insubordinate. I trust ISTA management will have the necessary accommodations arranged for the [Shelbyville] office so that there will no risk of further harm or injury to me." Ross went on to state that his own doctor had not released him to work; rather, the independent doctor hired by the Trust had concluded Ross was ready to work. On November 23, 1994, ISTA wrote a letter to the PSO representative regarding the letters from Dr. Johnson and Ross. In that letter, ISTA questioned Ross's desire to return to work, based on the "no intention of being insubordinate language," and suggested that ISTA had been misled by the PSO's representations that Ross was able to return to work. ISTA informed the PSO that Ross was *not* to report to Shelbyville until he presented a letter from his physician releasing him to work. Further, unless Ross provided such a letter, as he was no longer on long-term disability leave, his employment would be terminated as of December 5, 1994. Although Ross had sent a letter to ISTA dated November 22, 1994, responding to ISTA's letter regarding accommodation, that letter was apparently

not received by ISTA until after the November 23 letter was sent, and no further efforts were made by ISTA to accommodate Ross at the Shelbyville office.

Ross did not provide ISTA with a physician's release, nor did he attempt to obtain one prior to ISTA's deadline. Rather, Ross's attorney sent a letter to ISTA threatening the present action if ISTA did not continue to pay Ross benefits during the pendency of his appeal with the Trust. ISTA responded by terminating Ross's employment on December 4, 1994, when Ross failed to provide the requested physician's release.

### III. Analysis

#### A. Summary Judgment Standard

Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Russo v. Health, Welfare & Pension Fund, Local 705*, 984 F.2d 762 (7th Cir.1993). A thorough discussion of Rule 56 can be found in a trilogy of cases decided in 1986 by the Supreme Court of the United States. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *Celotex* addressed the initial burdens of the parties under Rule 56, and *Anderson* addressed the standards under which the record is to be analyzed within the structure of Rule 56.

The initial burden is on the moving party to demonstrate, "with or without supporting affidavits," the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56). A question of material fact is a question which will be outcome determinative of an issue in the case. The Supreme Court has instructed that the facts material in a specific case shall be determined by the substantive law controlling the given case or issue. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "designate 'specific facts shows that there is a genuine [material] issue for trial.'" *Id.* The nonmoving party cannot rest on its pleadings, *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920–21 (7th Cir. 1994); *Hughes v. Joliet Correctional Ctr.*, 931 F.2d 425, 428 (7th Cir.1991), nor may that party rely upon conclusory allegations in affidavits. *Cusson–Cobb v. O'Lessker*, 953 F.2d 1079, 1081 (7th Cir.1992).

During its summary judgment analysis, the court must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Smith v. Fruin*, 28 F.3d 646, 650 (7th Cir.1994), *cert. denied*, 513 U.S. 1083, 115 S.Ct. 735, 130 L.Ed.2d 638 (1995); *Brennan v. Daley*, 929 F.2d 346, 348 (7th Cir.1991). Furthermore, it is required to analyze summary judgment motions under the standard of proof relevant to the case or issue. *Anderson*, 477 U.S. at 252–55, 106 S.Ct. at 2512–14.

The 1986 Supreme Court trilogy was later reexamined in *Eastman Kodak v. Image Technical Servs.*, 504 U.S. 451, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992), a case born in the context of antitrust law. The most that can be said for *Eastman Kodak*, however, is that it did not tinker with *Celotex* and *Anderson*, and possibly involves an attempt to clarify *Matsushita*. This view is well-supported by an in-depth academic analysis in Schwarzer, Hirsch, and Barrans, *The Analysis and Decision of Summary Judgment Motions*, 139 F.R.D. 441 (1992).

#### B. ERISA Claim

■ The Trust has moved for partial summary judgment on Ross's ERISA claim to have the court determine what the appropriate standard of review will be for the Trust's determination. The Trust is an Indiana not-for-profit corporation established to provide various benefit plans to employees of Indiana school corporations and their dependents, including the LTD plan provided to ISTA employees. The Trustees of the Trust are the designated "Plan Administrator," but the plan allows the Trustees to appoint delegates

to "perform certain administrative duties under the Benefit Plan." *ISTA Insurance Trust Disability Income Benefits Benefit Plan Booklet,* ¶ 11.01. The plan provides the following definition for "Powers of Plan Administrator":

> The Plan Administrator (including its delegates) shall have all such powers as may be necessary to carry out the provisions of the Benefit Plan and may, from time to time, establish rules for the administration of the Benefit Plan and the transaction of the Benefit Plan's business. In making any such determination or rule, the Plan Administrator shall pursue uniform policies established from time to time. The Plan Administrator shall have the right to make any finding of fact necessary or appropriate for any purpose under the Benefit Plan including but not limited to the determination of eligibility for and the amount of any Benefit payable. The Plan Administrator shall have the right to interpret the terms and provisions of the Benefit Plan and to determine any and all questions arising under the Benefit Plan or in connection with the administration of the Benefit Plan, including, without limitation, the right to remedy or resolve possible ambiguities, inconsistencies, or omissions, by general rule or particular decision. To the extent permitted by law, all findings of fact, determinations, interpretations, and decisions of the Plan Administrator shall be conclusive and binding upon all persons having or claiming to have any interest or right under the Benefit Plan.

*ISTA Insurance Trust Disability Income Benefits Benefit Plan Booklet,* ¶ 11.02. The Trust has delegated certain administrative duties to The Huttleston Group, a third party administrator.

In *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court was faced with the question of appropriate standard of review for trustee decisions challenged under 29 U.S.C. § 1132(a)(1)(B). The *Firestone* Court determined that a *de novo* standard of review was appropriate except in cases where the fiduciary had been granted broad discretionary powers, in which case an arbi-

trary and capricious or abuse of discretion standard was to be used. 489 U.S. at 115, 109 S.Ct. at 956–57. The Trust here argues that the language quoted above, and specifically the phrase "shall have all such powers as may be necessary to carry out the provisions of the Benefit Plan," is sufficient to show that the Trustees as plan administrators have been granted discretion such that their decision should be reviewed under an arbitrary and capricious standard. Ross responds that the Trust has failed to consider the language quoted above that "in making any such determination or rule, the Plan Administrator shall pursue uniform policies established from time to time." Ross argues that the Trustees' failure to institute uniform policies vitiates the discretion granted them. The Trust replies that because the administrator "may, from time to time, establish rules" and "shall pursue uniform policies" in "making any such ... rules," there is no mandate to create the policies, and thus the failure to create policies does not impinge on the trustees' discretion.

While the Plan is not a model of clarity, it is clear to this court that the drafters' intent was to grant the Trustees the broadest possible discretion. Not only does the Plan grant the administrator "all such powers as may be necessary to carry out the provisions of the Benefit Plan," it also provides the administrator the "right to make any finding of fact necessary or appropriate for any purpose under the Benefit Plan including but not limited to the determination of eligibility" and "the right to interpret the terms and provisions of the Benefit Plan." In *Krawczyk v. Harnischfeger Corp.,* 41 F.3d 276 (7th Cir.1994), the Seventh Circuit held that a plan which granted the plan committee, which was the plan administrator, "such powers as may be necessary to discharge its duties hereunder, including, but not by way of limitation, the following powers and duties: (a) to construe and interpret the Plan, decide all questions of eligibility and determine the amount, manner and time of payment of any benefits hereunder ..." vested the plan committee with discretion such that the court reviewed the plan committee's decision under an abuse of discretion standard. 41 F.3d at 278. Although Ross attempts to distinguish

*Krawczyk* because it lacks the "uniform policies" language, he has failed to produce any case to support his argument. Further, despite Ross's argument to the contrary, the plan language does not "den[y] the trustee the power to act except pursuant to 'uniform policies'," Ross Memorandum in Opposition, p. 8, n. 3. Rather, the plan requires the plan administrator to act in a uniform manner when making determinations or rules. When paragraph 11.02 of the plan is taken as a whole, it is clear that the administrator is given broad discretion, and that the plan's requirement of uniformity does not require that rules be written before that discretion can be exercised.

Ross then argues that because a conflict of interest exists in the person of Bruce Rogers, Director of the Trust and a manager in ISTA, the *de novo* standard should be utilized. However, the Supreme Court in *Firestone* laid rest to that argument.

> Thus, for purposes of actions under § 1132(a)(1)(B), the *de novo* standard of review applies regardless of whether the plan at issue is funded or unfunded and regardless of whether the administrator or fiduciary is operating under a possible or actual conflict of interest. Of course, if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a "facto[r] in determining whether there is an abuse of discretion." Restatement (Second) of Trusts § 187, Comment *d* (1959).

*Firestone*, 489 U.S. at 115, 109 S.Ct. at 957. Although the Supreme Court does not differentiate between economic and personal conflicts of interest, it appears that the Court's reasoning would apply to either situation. Thus, Ross's conflict of interest argument is not persuasive. Certainly, evidence of personal animus aimed at Ross will be considered in determining whether an abuse of discretion occurred, but the Trust's decision will be weighed for an abuse of discretion, not under a *de novo* standard. Thus, the Trust's motion for partial summary judgment on the standard of review is granted.

## C. ADA Claims

■ The general rule regarding employment discrimination under the ADA is found at 42 U.S.C. § 12112(a), which states as follows:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

"Qualified individual with a disability" is defined in 42 U.S.C. § 12111(8) as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires," and the regulations promulgated by the Department of Labor to interpret the ADA further explain that the qualified individual with a disability is one who has the requisite skill, experience, education and other job-related requirements and who can, with or without reasonable accommodation, perform the essential functions of such position. 29 C.F.R. § 1630.2(m). ISTA concedes that Ross has a disability and that he has the requisite skill and experience to perform the job of UniServ Director. Thus the question is whether Ross was able to perform the essential functions of the position if provided with reasonable accommodation, given that the essential functions of the position were those listed on the job description and performance expectations list provided as Ross's deposition exhibit 13.

In *Vande Zande v. State of Wis. Dep't. of Admin.*, 44 F.3d 538 (7th Cir.1995), Chief Judge Posner wrote that "reasonable' may be intended to qualify (in the sense of weaken) 'accommodation,' in just the same way that if one requires a 'reasonable effort' of someone this means less than the maximum possible effort ..." and that accommodation meant that "[t]he employer must be willing to consider making changes in its ordinary work rules, facilities, terms and conditions in order to enable a disabled individual to work." 44 F.3d at 542, 543. Following that lead, Judge Cummings wrote in *Beck v. University of*

*Wis. Bd. of Regents,* 75 F.3d 1130 (7th Cir. 1996) that both parties have a responsibility to engage in an interactive process to determine what reasonable accommodations are necessary to enable the employee to work. Recognizing that the failure of the interactive process is often the cause of litigation, the *Beck* court went on to hold that "courts should attempt to isolate the cause of the breakdown [of the interactive process] and then assign responsibility." 75 F.3d at 1135. "Liability for failure to provide reasonable accommodations ensues only where the employer bears responsibility for the breakdown." *Id.* at 1137. In *Bultemeyer v. Fort Wayne Community Schools,* 100 F.3d 1281 (7th Cir.1996), the Seventh Circuit reversed Magistrate Cosbey's order granting summary judgment for the employer, finding that a material issue of fact existed as to whether the school had engaged in the interactive process in good faith. The *Bultemeyer* court held that the "employer has to meet the employee half-way, and if it appears that employee may need an accommodation but doesn't know how to ask for it, the employer should do what it can to help." 100 F.3d at 1285.

In this case, it is clear that both parties engaged in the interactive process. When Ross inquired about returning to work through the PSO representative, ISTA responded by inquiring into what accommodations Ross would need to return. Ross provided a list of accommodations both personally and from his physician. ISTA responded to the physician's list and agreed to do most of the items on the list. However, ISTA stated that "[w]e cannot schedule all meetings within the UniServ unit to be held at the UniServ office." Although the tone of ISTA's letters up to this point had not been entirely welcoming, the interactive process was working. After this point, though, the breakdown began. Ross's November 16 letter stated he would report, but that he had not been released to work. This caused the ISTA to require Ross to provide a doctor's release, which he did not provide. Meanwhile, Ross's reply

to the ISTA's response on reasonable accommodations suggested a meeting to resolve the differences, but did not suggest any solutions to the remaining problem. It appears that while Ross wanted to work, he knew he was not able to work, and once ISTA realized Ross was not able to work, they did not want him to work. Neither side is blameless in the breakdown, but this court would be hard pressed to say which side was more at fault. Unlike the school in *Bultemeyer,* ISTA did inquire about accommodations and make efforts to see how Ross could work again. Certainly ISTA's failure to have any of the physical facility accommodations made does not place it in a good light, but ISTA ended its efforts to accommodate Ross when they received his letter stating he had not been released to work on Monday, November 21, after sending the accommodation response letter on Friday, November 18. However, this court need not decide where the interactive process broke down, because even if the parties had agreed to a reasonable accommodation, Ross would not have been able to perform the essential functions of the job because he was totally disabled during the relevant time period.

In *Bollenbacher v. Helena Chemical Co.,* 934 F.Supp. 1015 (N.D.Ind.1996)[1], (now Chief) Judge Lee faced a situation very similar to this one. In that case, the plaintiff alleged that his rights under ERISA were violated when he was denied long term disability benefits and that his rights under the ADA were violated when his employment was terminated. 934 F.Supp. at 1020, 1026. Judge Lee held that because the plaintiff alleged that he was totally disabled in his application for disability benefits, he could not simultaneously argue that he was capable of performing the essential functions of his job such that he was a qualified individual with a disability under the ADA. *Id.* at 1026–27. Even though the plaintiff had continued to work at his position after applying for the disability benefits, the court in *Bollenbacher* held that he was not a qualified individual

---

**1.** *Bollenbacher v. Helena Chemical Co.,* 1:95cv350 WCL, was dismissed by stipulation of the remaining parties on September 24, 1996.

No appeal has been filed, and the time for appeal has passed.

with a disability protected by the ADA when his employment was later terminated. *Id.* Judge Lee distinguished *Overton v. Reilly,* 977 F.2d 1190 (7th Cir.1992), on the basis that the plaintiff in *Overton* had not alleged he was totally disabled when he applied for Social Security benefits, unlike the plaintiff in *Bollenbacher. Id.* Although Ross does not specifically allege that he is totally disabled in his complaint, he is only entitled to long term disability benefits if he is totally disabled, and he has alleged that his long-term disability benefits were wrongfully terminated. Beyond that minor difference, the facts in these cases ate on all fours. Ross, like Bollenbacher, applied for long term disability benefits on the basis of his total disability (and Ross actually received the benefits.) Ross, like Bollenbacher, was later terminated from his employment. Bollenbacher was in the process of applying for Social Security disability benefits, which Ross has applied for and received. Neither Bollenbacher nor Ross has worked since being terminated from their prior employment. Although Ross's disability benefits were terminated because the Trust determined he was no longer totally disabled, Ross has consistently held the position that he was totally disabled and entitled to the benefits. He cannot simultaneously argue that he is capable of performing the essential functions of his job. Thus, no genuine issue of fact exists as to whether Ross was a qualified individual with a disability, he was not. ISTA's motion for summary judgment is therefore granted.

## IV. Conclusion

ISTA's motion to strike, as stated above, is now **DENIED.** As Ross conceded the Trust's motions for summary judgment on the ADA and state law claims against it, those motions are now **GRANTED.** The Trust's motion for partial summary judgment on the question of standard of review for the ERISA claim is also **GRANTED.** Finally, ISTA's motion for summary judgment is **GRANTED** on the ADA claim. Ross's pending state law claims against ISTA are **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1367(c) and he is given leave to re-file them in state court. The clerk is **ORDERED** to set this cause for pretrial conference on the remaining issues.

**IT IS SO ORDERED.**