**Edmond C. TEUMER, Plaintiff–Appellant,**

**v.**

**GENERAL MOTORS CORPORATION, Defendant–Appellee.**

No. 94–1085.

United States Court of Appeals, Seventh Circuit.

Argued June 6, 1994.

Decided Sept. 7, 1994.

Jerry L. Lambert (argued), Connie J. Lambert, Stinespring, Lambert, Schroeder & Associates, Flossmoor, IL, Frank A. Hauenschild, Flossmoor, IL, for plaintiff-appellant.

Michael A. Warner, Marcia A. Mahoney (argued), Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for defendant-appellee.

Before ALARCON,* COFFEY and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

This case involves alleged ERISA violations stemming from Edmond Teumer's layoff from General Motors and the timing of his subsequent recall to the company. The district court granted summary judgment for General Motors on both counts of Teumer's complaint, relying on a limitations bar to reject one and an inadequacy of proof to dispose of the other. 840 F.Supp. 538 (N.D.Ill.1993). Teumer's appeal requires us to consider these issues afresh and in the process address certain areas of ERISA law that have to date been left unresolved in our circuit. Doing so leaves us in substantial agreement with the district court's resolution of the legal and factual matters involved in this case.

When Teumer was laid off from his production supervisor position at GM's Electro Motive Division Plant 207 on May 1, 1986, he had amassed fourteen years and nine months of service with GM. At the time an Income Protection Plan (IPP) was in effect at GM which provided to all laid off salaried employees with fifteen years or more of service benefits additional to the basic package of layoff benefits to which all laid off salaried employees were entitled. Employees with only ten years of service were also eligible for IPP benefits when layoffs were due specifically to plant closings. GM, however, categorized the 1986 reduction in force at Plant 207 as a "plant consolidation" rather than a "plant closing," and because Teumer was several months short of the fifteen years service otherwise necessary to trigger IPP eligibility he did not receive benefits under the plan upon his layoff. In 1989 and 1991 Teumer was twice recalled to temporary positions, and in September, 1991, he was permanently recalled to a production supervisor position. Teumer originally filed suit on March 17, 1992, and subsequently amended his complaint twice. In its final form, Teumer's complaint purports to state several violations of ERISA § 510 (29 U.S.C. § 1140), some centering around the alleged wrongfulness of his original layoff, another concentrating on an alleged wrongful delay in his recall, and all relating to the impact of these events on his IPP rights. The district court granted summary judgment for GM. Selecting Illinois' five year statute of limitations for retaliatory discharge as suited to actions on § 510 rights and finding tolling principles inapplicable in this case, the court held Teumer's layoff-related claims time-barred. The court rejected Teumer's other claim as unsupported by any proof that GM's recall decisions relating to him were motivated by a desire to frustrate his eligibility for IPP benefits.

The appeal in this case is muddied somewhat by the fact that Teumer does not merely contest the district court's selection and application of a limitations bar for § 510 rights or its appraisal of the evidence adduced in support of his § 510 theory. For the first time he argues an additional and wholly distinct theory of liability in support of one of his layoff-related claims, a theory of liability which is in fact much more suited to the substance of that claim (and has a potentially longer limitations period, *see Jenkins v. Local 705*, 713 F.2d 247, 253 (7th Cir.1983)) than the § 510 theory that has been the sole legal focus of this case until now.

Section 510 declares it unlawful for an employer

> to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan....

Made enforceable by participants and beneficiaries through § 502(a)(3), § 510 protects employment relationships from disruptions designed to frustrate the vesting of benefit plan rights or the continued enjoyment of rights already vested but yet to be partaken. *See Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 142–44, 111 S.Ct. 478, 485, 112

---

* The Honorable Arthur L. Alarcon of the United States Court of Appeals for the Ninth Circuit is sitting by designation.

L.Ed.2d 474 (1990); *Kross v. Western Electric Co.*, 701 F.2d 1238, 1243 (7th Cir.1983). Section 510, however, does not protect employees against all employer actions undertaken with an eye toward thwarting the attainment of benefits; only changes in one's *employment status* cannot stem from benefit-based motivations. *See McGath v. Auto–Body North Shore, Inc.*, 7 F.3d 665, 668–69 (7th Cir.1993); *Deeming v. American Standard, Inc.*, 905 F.2d 1124, 1127 (7th Cir.1990). For example, repeatedly amending the terms of a plan immediately before an employee is about to achieve eligibility for benefits under the pre-altered plan, even if done specifically to avoid payment of benefits to the employee, is not prohibited by § 510 because it is not an action taken against the employment situation itself. *See McGath*, 7 F.3d at 667–69. When the alleged interference is not to the "employment relationship which *gives rise* to an individual's [benefit] rights," *id.* (quoting *Deeming*, 905 F.2d at 668), § 510 is not implicated.

Although it includes only two "counts," Teumer's complaint in substance purports to allege three violations of ERISA § 510. (All relate to benefits under the IPP whose status as an "employee benefit plan" within the coverage of ERISA no one disputes. *See* 29 U.S.C. § 1002.) Two of Teumer's charges, that he was improperly laid off ahead of three other employees into whose positions he was entitled to "bump" and that other workers were improperly recalled to work before him, involve alleged interference with his attainment of the IPP rights of a fifteen-year employee. The third, however, is an allegation that GM intentionally mischaracterized the cause of the 1986 layoffs as the "consolidation" of Plant 207 (when in fact the plant was "closing") in order to deny to Teumer and others with more than ten but less than fifteen years of service the IPP benefits to which they were already rightfully entitled as ten-year employees. This last allegation does not state a claim under § 510. In asserting that his rights under the IPP were fully vested under the terms of the plan by virtue of his ten years of service and the actual "closing" of Plant 207, Teumer has identified the wrongful act that interfered with his receipt of IPP benefits as GM's squelching of the true nature of the plant shutdown. This alleged wrongful interference was not a change in his employment position—in fact, the only change was the layoff itself which, under the operative theory that the plant was in fact undergoing a closing, would have triggered, not prevented, his eligibility for IPP benefits. Any refusal to pay or denial that Teumer was eligible for IPP benefits, even if made in bad faith, did not affect Teumer's employment status and could not form the basis for a § 510 violation.

And there is no reason it should. If one is in fact entitled to benefits under a plan and does not receive them for *any* reason, malicious or not, § 502(a)(1)(B) provides a remedy: "A civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." To the extent Teumer's suit involves a claim that Plant 207 did "close" and GM improperly did not pay out IPP benefits to him, a qualifying ten-year employee, it seeks relief under § 502(a)(1)(B). Teumer now recognizes as much, and we agree that his complaint stated a set of facts adequate to support such relief. That it misidentified the governing legal theory, repeatedly invoking § 510 as the sole authority for all of his claims, is not fatal to later assertion of the proper theory under the federal system's forgiving notice pleading rules. *See Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1134 (7th Cir.1992); *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir.1992). (In light of our discussions in *Tolle* and *Bartholet*, we disavow any suggestion contained in dicta in *Pritchard v. Rainfair, Inc.*, 945 F.2d 185, 191 (7th Cir.1991), that a complaint that does not contain the appropriate legal theory to match the facts alleged is deficient.)

But what is fatal to Teumer's § 502(a)(1)(B) theory on appeal is his failure to mention it to the district court when the time did come in the proceedings below to present legal arguments linking the claims described in the complaint to the relevant

statutory (or other) sources for relief. In this case, that time came when Teumer responded to GM's motion for summary judgment. In his motion in opposition to GM's motion for summary judgment and in his brief to the district court Teumer continued to characterize his entire suit as a § 510 action, never pointing out that one of the claims contained within the mass of alleged wrongdoing on GM's part, framed properly, really sought recovery under the authority of § 502(a)(1)(B). The failure to draw the district court's attention to an applicable legal theory waives pursuit of that theory in this court. *See Protectoseal Co. v. Barancik*, 23 F.3d 1184, 1188 (7th Cir.1994); *Dempsey v. Atchison, Topeka & Santa Fe Railroad Co.*, 16 F.3d 832, 835 n. 3 (7th Cir.), *cert. filed*, 63 U.S.L.W. 3001 (1994). It is true that at times we and other courts have forgiven similar oversights. *See, e.g., Tolle*, 977 F.2d at 1135; *Held v. Manufacturers Hanover Leasing Corp.*, 912 F.2d 1197, 1203–04 (10th Cir.1990). *But see id.* at 1207–08 & nn. 1–3 (Ebel, J., dissenting in part). In *Tolle*, with hesitation, we allowed the appellant, who had also mistakenly relied exclusively on § 510 in the district court, to "push[ ] the bounds of waiver" and resurrect on appeal a theretofore unstated § 502(a)(1)(B) theory. Here, however, we are not moved to do the same, partly because *Tolle* itself took pains to explain for the benefit of future litigants the difference between enforcing the terms of a plan and challenging an employer's interference with the attainment of benefit rights in the first instance and that the former should be presented as a § 502(a)(1)(B), not § 510, claim. Teumer in fact knew about *Tolle*, citing it prominently below for other propositions. He had no excuse for neglecting to argue to the district court that his complaint alleged one claim that should not receive the same § 510 statute of limitations as all the others. He proceeded on the assumption that it should and left § 502(a)(1)(B) out of the case. Now is too late to press this new theory of recovery.

The § 510 claims that have been properly characterized and preserved are based on the 1986 decision to lay off Teumer and on decisions, apparently made in 1989, to recall others employees ahead of Teumer. The district court determined that Illinois' five year statute of limitations for retaliatory discharge should apply to suits on § 510 rights and accordingly found Teumer's challenge to the layoff time-barred. To date, our court has not decided which statute of limitations should apply to claims premised upon § 510 although we have discussed the issue, *see Tolle*, 977 F.2d at 1137–38, and other district courts in Illinois have reached the same conclusion as the district court in this case. *See Bonnema v. Emery Worldwide, A.C.F.*, 1992 WL 211496 (N.D.Ill.1992); *Gladich v. Navistar Int'l Transp. Corp.*, 703 F.Supp. 1331 (N.D.Ill.1989).

When Congress does not provide a statute of limitations for claims arising under federal statutes—and aside from several specific exceptions not applicable here, *see* 29 U.S.C. §§ 1113, 1303(e)(6), (f)(5), 1368(d)(2), 1370(f) & 1451(f), it has not for claims under ERISA—a court should normally apply an appropriate state statute of limitations. *See Reed v. United Transp. Union*, 488 U.S. 319, 323–24, 109 S.Ct. 621, 624–25, 102 L.Ed.2d 665 (1989).[1] This requires us to "character-

1. There is a "narrow exception to the general rule" that is activated "when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking." *Id.* (quoting *DelCostello v. Teamsters*, 462 U.S. 151, 172, 103 S.Ct. 2281, 2294, 76 L.Ed.2d 476 (1983)); *see also Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 355–58, 111 S.Ct. 2773, 2778–79, 115 L.Ed.2d 321 (1991) (plurality opinion). (For criticism of this exception and an argument that there should be *no* limitations period when state law cannot fill Congressional silence with an "appropriate" analogue, *see Agency Holding Corp. v. Malley–Duff & Associates, Inc.*, 483 U.S. 143, 157–70, 107 S.Ct. 2759, 2767–74, 97 L.Ed.2d 121 (1987) (Scalia, J., concurring in the judgment).) Neither party has argued that this exception should come into play. Nor do we discern such an inadequacy in the limitations options Illinois has to offer or the existence of a particularly appropriate federal analogue that would prompt us to depart from the usual practice in this case. *See Byrd v. MacPapers, Inc.*, 961 F.2d 157, 159 n. 1 (11th Cir.1992); *Held*, 912 F.2d at 1209–10 (Ebel, J., concurring in part); *Gladich*, 703 F.Supp. at 1332.

ize the essence" of the federal claim in question and find the most analogous cause of action in Illinois law.[2] *See Wilson v. Garcia,* 471 U.S. 261, 267–70, 105 S.Ct. 1938, 1942–44, 85 L.Ed.2d 254 (1985). Section 510 protects workers against several distinct abuses: the disruption of employment privileges to *prevent* (i.e. interfere with) the vesting or enjoyment of benefit rights—the wrong alleged in this case; the disruption of employment privileges to *punish* (i.e. retaliate for) the exercise of benefit rights; and the disruption of employment privileges to prevent or punish the giving of testimony in any proceeding relating to ERISA or a sister act. The circuit courts which have been called upon to apply statutes of limitations to actions brought to enforce § 510 rights have reached disparate conclusions as to which state causes of action best approximate the federal remedy. *See Hinton v. Pacific Enterprises,* 5 F.3d 391, 394 (9th Cir.1993) (applying California's statute of limitations for wrongful termination pleaded in contract to § 510 interference claim), *cert. denied,* —— U.S. ——, 114 S.Ct. 1833, 128 L.Ed.2d 462 (1994); *Byrd v. MacPapers, Inc.,* 961 F.2d 157, 159 (11th Cir.1992) (finding that state cause of action for discharge in retaliation for filing workers' compensation claim is best analogue to § 510 retaliation claim and § 510 generally); *Felton v. Unisource Corp.,* 940 F.2d 503, 510–13 (9th Cir.1991) (analogizing § 510 claims generally to wrongful termination/retaliatory discharge in violation of public policy, finding comparison to employment discrimination and other state civil rights causes of action less apt, and applying Arizona's corresponding statute of limitations); *McClure v. Zoecon, Inc.,* 936 F.2d 777, 778–79 (5th Cir.1991) (applying state's single statute of limitations for employment discrimination and wrongful discharge to § 510 interference claims, not mentioning which analogue was better but explicitly rejecting a contract parallel); *Held,* 912 F.2d at 1205 (finding that the most analogous claim under New York law to a § 510

interference claim is a claim for employment discrimination); *Heideman v. PFL, Inc.,* 904 F.2d 1262, 1267 (8th Cir.1990) (applying contract statute of limitations to § 510 interference claim), *cert. denied,* 498 U.S. 1026, 111 S.Ct. 676, 112 L.Ed.2d 668 (1991); *Clark v. Coats & Clark, Inc.,* 865 F.2d 1237, 1241–42 (11th Cir.1989) (applying statute of limitations for the enforcement of statutorily created rights to § 510 interference claims, rejecting personal injury comparison because claims are more in the nature of contract); *Gavalik v. Continental Can Co.,* 812 F.2d 834, 846–47 (3rd Cir.) (likening § 510 interference claims to race-based employment discrimination), *cert. denied,* 484 U.S. 979, 108 S.Ct. 495, 98 L.Ed.2d 492 (1987).

What may be contributing toward this lack of consensus in the grafting of limitations periods for actions on § 510 rights is the variant nature of the several rights recognized in that one provision. That is, protection from retaliation in the workplace for the exercise of a favored right is conceptually quite distinct from protection from interference with the process of attaining that right at the hands of the party who controls the process yet against whose financial interest the vested right would stand. The former does seem to deal with a particular species of abuse that the common law tort of wrongful termination or retaliatory discharge redresses: preventing employers from punishing employees for taking advantage of or participating in those benefits, privileges or processes so favored by public policy as to be deemed outside the wide range of permissible considerations on which to base at-will employment decisions. Through ERISA, Congress has announced a policy preference in the enjoyment of vested benefit plan rights and created a remedy against employers who do not respect that preference; through its courts, Illinois has done the same with respect to a number of favored areas, ranging from the claiming of workers' com-

---

2. Because Illinois is both the forum state and the state in which the significant events of this case took place, we will refer to its law without resolving the difficult question of what is the proper choice-of-law rule when selecting state limitation periods for federal claims. *See Auto Workers v. Hoosier Cardinal Corp.,* 383 U.S. 696, 705 n. 8,

86 S.Ct. 1107, 1113 n. 8, 16 L.Ed.2d 192 (1966) (reserving the question); *Held,* 912 F.2d at 1202 (listing competing approaches among the circuits); *see also* Paul M. Bator, *et al.,* Hart and Wechsler's the Federal Courts and the Federal System, at 959 (3rd ed. 1988).

pensation benefits to assisting a law enforcement agency in a criminal investigation and whistle-blowing generally. *See Spearman v. Exxon Coal USA, Inc.*, 16 F.3d 722, 725 (7th Cir.1994); *Palmateer v. International Harvester Co.*, 85 Ill.2d 124, 52 Ill.Dec. 13, 421 N.E.2d 876 (1981); *Paskarnis v. Darien–Woodridge Fire District,* 251 Ill.App.3d 585, 191 Ill.Dec. 138, 623 N.E.2d 383 (1993). The parallel seems especially strong when one considers that the Illinois tort originated as a protection for employees seeking to enjoy their workers' compensation entitlements, *see Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978), which, like pension and other plan benefits, fall within a class of economic rights and privileges that provide for the special needs of employees in the modern workplace. This view of § 510 would call for an application of Illinois' residual five-year statute of limitations, 735 ILCS 5/13–205 (1992), since the only Illinois court apparently to have addressed the issue has found that retaliatory discharge claims against private employers are governed by this limitations provision. *See Henon v. Lever Brothers Co.*, 114 Ill. App.3d 608, 70 Ill.Dec. 322, 449 N.E.2d 196 (1983); *see also Halleck v. County of Cook,* 202 Ill.Dec. 374, 377–78, 637 N.E.2d 1110, 1113–14 (Ill.App.1994) (holding that the Governmental Tort Immunity Act's one-year limitations period applies to retaliatory discharge claims against public bodies, distinguishing but not criticizing *Henon*); *Berghoff v. R.J. Frisby Manufacturing Co.*, 720 F.Supp. 649 (N.D.Ill.1989) (following *Henon* and explaining why its holding should be accorded authoritative weight).

However, § 510's protection against employer interference with the attainment of benefit rights in the first instance seems to target a distinct abuse which finds a tighter analytical parallel in the good faith and fair dealing doctrines of contract law. Benefit plans are themselves contracts between employee and employer. *See Jenkins, supra.* They impose conditional duties on employers to provide to employees agreed benefits of one sort or another. The employer, however, frequently retains much power over the occurrence of many of the conditions precedent to its duties under a plan, as aspects of the employment relationship over which it has inherent control, like employment status, position or years of service, are commonly relevant to benefit eligibility. Under ordinary principles of contract law, a party may not purposely prevent the occurrence of a condition of its duties under a contract. *See* E. Allan Farnsworth, II Farnsworth on Contracts § 8.6, at 380 (1990). And, in its law of contracts, Illinois recognizes "that a party who prevents the fulfillment of a condition upon which his own liability rests may not defeat his liability by asserting the failure of the condition he himself has rendered impossible." *Cummings v. Beaton & Associates, Inc.*, 249 Ill.App.3d 287, 301, 187 Ill.Dec. 701, 710, 618 N.E.2d 292, 303 (1992). An employer who discharges an employee or otherwise tinkers with his employment status in order to prevent him from attaining his contractual rights under a benefit plan avoids the ripening of his duties under the plan by sabotaging the occurrence of a condition precedent. By forbidding such practices in § 510 of ERISA, Congress has, in the area of employee benefit plans, in effect adopted a statutory version of the common law's "wrongful prevention doctrine" (which itself would be unavailable to employees because of ERISA's sweeping displacement of state law in this area). And when a nonperforming party's duty under a contract is not excused because the party prevented a condition precedent from occurring, that party is in breach of the contract; the remedy is in contract; the applicable statute of limitations is the one governing disputes under the type of contract involved. Documented benefit plans are written contracts, actions on which in Illinois are subject to a ten-year limitations period. *See* 735 ILCS 5/13–206 (1992).

If we were to stop here, we would apparently be faced with competing analogues to § 510 rights in state law.[3] We could accord-

---

3. GM has suggested that we consider another statute of limitations to govern § 510 claims: the 180 day period, set out in 775 ILCS 5/7A–102(A)(1) (1992), in which claims of employment discrimination must be administratively pursued or else forfeited. As a categorical matter, we believe discrimination law is further from the essence of ERISA § 510 protections than the

ingly decline to seek *a* best parallel cause of action to § 510 generally and instead adopt a practice of looking to the one that provides the closest theoretical fit to the particular § 510 violation alleged. Here interference is the claim and, under the case-to-case approach suggested by the above discussion, a contract limitations period seems to be most apt. However, doing so would be shortsighted for several reasons. First of all, there is much to be said, in the interest of simplicity, for selecting a single most appropriate statute of limitations for all claims under this important and often-invoked federal statutory safeguard. In *Wilson v. Garcia*, the Supreme Court concluded that "[t]he federal interests in uniformity, certainty, and the minimization of unnecessary litigation all support the conclusion that Congress favored this simple approach" for civil rights actions under 42 U.S.C. § 1983. 471 U.S. at 275, 105 S.Ct. at 1946–47. As the modern § 1983 had grown to embrace a wide variety of claims across the constitutional spectrum, a consensus had developed that the fresh selection of a limitations analogue in each § 1983 case was a time-consuming and often arbitrary activity best discarded rather than continued. *See id.* at 272–74 & n. 25, 105 S.Ct. at 1944–46 & n. 25. While § 510 certainly is not the font for a wide diversity of claims that § 1983 has become, the analytic distinction between the two primary wrongs that it targets, although perhaps sharp in theory, will often blur in the context of real disputes. Attempts to preserve the distinction solely for the purpose of borrowing limitations statutes will frequently be artificial and could contribute to a perception that arbitrariness or even result-orientation controlled the ultimate selections in particular cases, the sort of shortcomings that *Wilson* court sought to avert. *See id.* at 272 n. 24, 105 S.Ct. at 1944–45 n. 24. More precisely, when an employee is already drawing benefits under a plan at the time he is discharged, retaliation and interference are, in practical effect, inseparable theories. That is, because such motives are so similar and, in an actual case, probably mixed, it seems fruitless to try to distinguish anger with the employee's past exercise of his benefit rights from a desire to forestall the future enjoyment of those same benefits. Besides the practical difficulty of such a task, embarking on it at all assumes the existence of a motivational process perhaps more nuanced than that of most individual and corporate decisionmakers. In areas like this one, where the law's dependence on experience is great, it is sometimes best to resist the natural tendency to resort to ever finer legal distinctions.

■ Moreover, in recognition of the overlap between backward-looking retaliation and forward-looking interference, at least in policy if not always in practice, Illinois has defined its "retaliatory" discharge tort broadly to encompass discharges that *either* retaliate against *or* interfere with the exercise of favored rights. *See Richardson v. Illinois Bell Telephone Company*, 156 Ill.App.3d 1006, 109 Ill.Dec. 513, 515–16, 510 N.E.2d 134, 136–37 (1987); *Wolcowicz v. Intercraft Industries Corp.*, 133 Ill.App.3d 157, 88 Ill.Dec. 431, 433–35, 478 N.E.2d 1039, 1041–43 (1985). (We have already recognized that this Illinois cause of action is of such scope. *See Horton v. Miller Chemical Co.*, 776 F.2d 1351, 1355–56 (7th Cir.1985), *cert. denied*, 475 U.S. 1122, 106 S.Ct. 1641, 90 L.Ed.2d 186 (1986).) Thus, contract's wrongful prevention doctrine is not, after all, the only viable state analogue to ERISA interference claims. In fact, the interference prong of the retaliatory discharge tort quite clearly bears a closer family resemblance to the § 510 right, as it deals generally with favored areas of public policy and frequently with economic/employment concerns—like workers' compensation—as opposed to the wholly general coverage of contract law. In sum, the analytical correspondence between Illinois' retaliatory discharge tort and both retaliation and interference claims under § 510, the similarity in

parallels we have sketched in the text, because its fundamental concern is the redress of the dignitary affront that decisions based on certain group characteristics represent, not the guarantee of particular economic expectancies. Illinois' general two-year personal injury statute of limitations is also an unlikely candidate here since the Illinois courts have applied it narrowly to actions involving actual bodily injury, *see Gladich*, 703 F.Supp. at 1334; indeed, the *Henon* court spurned it in an action involving an injury very similar to those covered by § 510.

substantive focus of that tort and § 510, and the value in having all § 510 claims controlled by a single, predictable limitations period convince us that the five-year statute of limitations governing retaliatory discharge claims in Illinois should apply to all § 510 actions in which Illinois limitations law is to be borrowed.

■ Teumer's § 510 claim challenging the legality of his layoff accrued in 1986 when the layoff occurred and he found out about it, *see Tolle*, 977 F.2d at 1140, and is time-barred since this suit was originally filed in 1992. In his opening brief, Teumer presents a meritless argument that the claim did not accrue until he first discovered the information from which he ascertained the alleged unlawful nature of the layoff. As GM rightly points out, such a contention has nothing to do with accrual; Teumer is really insisting that the limitations clock should be equitably tolled for the time in which he was unable to determine that his injury (of which he was aware)—the layoff—was due to wrongdoing. *See Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir.1990), *cert. denied*, 501 U.S. 1261, 111 S.Ct. 2916, 115 L.Ed.2d 1079 (1991). But by his own admission Teumer began to suspect wrongdoing about two and one-half years before he filed suit, and one and one-half years before the limitations clock had run, when he discovered that certain prior work experience—which could have affected his layoff priority—had been deleted from his work record. Principles of equitable tolling required him to bring suit within a "reasonable time" after he obtained, or could have obtained by due diligence, this information. *See id.* at 453. Teumer has made no attempt to show that this delay was reasonable, and we doubt that he could. In his reply brief, Teumer amends his argument (and his complaint in effect) by asserting that the wrongful act of which he is complaining is not the layoff itself but the alteration of his work record, which he did not learn of until 1989. Besides being thoroughly waived, this argument is without merit. Once an unlawful action is taken, a claim accrues when the putative plaintiff discovers

the *injury* that results. *See id.* at 450. Teumer's alleged injuries were the layoff and the timing of the recall. His claims that focus on the former are time-barred. His claims involving the latter are not, but they face another obstacle.

■ A plaintiff seeking relief under § 510 must establish that the complained of action affecting his employment situation was taken by his employer with the specific intent of interfering with his benefit rights. *See Meredith v. Navistar Intern'l Transp. Co.*, 935 F.2d 124, 127 (7th Cir.1991). The illicit motivation must be a "determinative factor" in that action. *See id.* That is, the plaintiff must ultimately show that a desire to frustrate his attainment or enjoyment of benefit rights contributed toward the employer's decision[4] and can avoid summary judgment only if the materials properly before the district court, construed sympathetically, allow for such a conclusion. Here they do not. It is undisputed (in the parties Local Rule 12 statements) that the GM official who altered Teumer's work record did so without knowing what the impact of such action would be on Teumer's recall rights, did not discuss IPP benefits with anyone prior to making his decision, and knew nothing about the funding of IPP benefits except that they were not the responsibility of the individual plants where affected workers were employed. Teumer has not come forward with evidence that could establish against this backdrop that IPP considerations were in fact behind the erroneous deletion of one portion of his work record. Teumer actually asserts that no other employees had work experience removed from their records and that GM eventually corrected his record to again accurately reflect his experience. Rather than betray an insidious plot by GM to tamper with work records in the hope of engineering particular layoff and recall postures that would reduce IPP expenditures, these admitted facts indicate that any improper amendment of Teumer's work history was at worst an isolated instance of thoughtless and lax recordkeeping. Whether the adjustments to Teumer's

---

4. In cases where motives may be mixed, once the plaintiff establishes that there was a bad one at work, the defendant may prevail by showing that

the same action would still have been prompted by wholly legitimate motives. *See id.; Gavalik*, 812 F.2d at 859–60 & n. 41.

work record actually affected the timing of his recall may well be a matter of genuine dispute on this record, but whether they were carried out with an eye toward his eventual IPP eligibility is not. Since Teumer has not attempted to identify any other instance of improper decisionmaking on GM's part that delayed his recall and thus impeded the attainment of his IPP rights, the judgment of the district court must stand.

AFFIRMED.