Suzanne E. AHNERT, et al., Plaintiffs,

v.

DELCO ELECTRONICS CORP., General Motors, Corp., International Union, United Automobile, Aerospace and Agricultural Implement Workers of America Internation Union (UAW) and UAW Local No. 292, Defendants.

No. IP 95–615–C–B/S.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Oct. 22, 1997.

Michael .C. Kendall, Kendall Law Office, Indianapolis, IN, for Plaintiffs.

Nora L. Macey, Macey, Macey and Swanson, Indianapolis, IN, Herbert C. Snyder, Jr., Barnes & Thornburg, Ft. Wayne, IN, for Defendants.

***ENTRY DENYING PLAINTIFFS' MOTION FOR RECONSIDERATION AND GRANTING CORPORATE DEFENDANTS' MOTIONS FOR LEAVE TO AMEND ANSWER AND FOR SUMMARY JUDGMENT***

BARKER, Chief Judge.

On February 7, 1997, the Court granted summary judgment in the above named action for the Union Defendants (UAW and UAW Local No. 292) on Plaintiffs' fair representation, ERISA, sex discrimination and ADEA claims. We determined that Plaintiffs had failed to exhaust their intra–union remedies, as required in order to state a fair representation claim, and that, even if they had exhausted those remedies, their fair representation claims were time–barred. In addition, the Court held that Plaintiffs' age discrimination claims relating to seniority and retaliation exceeded the scope of their EEOC charge and that, even if appropriately before the Court, the seniority claim was untimely. As to their age discrimination claims relating to the administration of the apprenticeship program at the General Motors (GM)/Delco Kokomo Plant, the Court

determined that the Portal–to–Portal defense was an absolute defense to liability under the ADEA and, thus, these claims were also barred. Further, the Court held that. summary judgment was warranted as to Plaintiffs' sex discrimination claims because those claims both exceeded the scope of Plaintiffs' EEOC charges and were not timely filed. Finally, regarding Plaintiffs' ERISA claims, the Court held that a two–year statute of limitations applied and that, accordingly, those claims were also time–barred as to the Union Defendants. The Court did not extend its ruling on Plaintiffs' ERISA claims to the Corporate Defendants in this action because they had failed (and had not sought leave) to assert the affirmative defense of statute of limitations, nor had they moved for summary judgment on that claim.

On February 18, 1997, Plaintiffs moved this Court to reconsider its entry of judgment as to their ERISA claims. In support of their motion to reconsider, Plaintiffs cited the unpublished decision in *Wilson v. Kraft Foods. Inc.*, IP 95–0274–C–M/S (Aug. 15, 1996 S.D. Ind.) (McKinney, J.), in which Judge McKinney held that a ten–year statute of limitations governs ERISA claims such as the one in this action. At nearly the same time that Plaintiffs asked this Court to reconsider its decision relating to their ERISA claims, the Defendant in *Wilson* urged Judge McKinney to reconsider his holding in light of the decision in *Ahnert.* Noting that "[i]t would be unfortunate indeed if the statute of limitations question hinged upon which federal judge held jurisdiction over the matter," Judge McKinney certified the question of the what statute of limitations governs ERISA Section 510 claims arising in Indiana. The Seventh Circuit did not accept jurisdiction over the appeal, however, and so we revisit the issue of the appropriate statute of limitations for ERISA Section 510 claims. Although we agree with Judge McKinney that an issue of such weighty consequence should not turn upon which judge on a particular federal district court addresses it, having reviewed his analysis as well as our own, we cannot agree that a ten–year statute of limitations governs the issue in this case. Accordingly, Plaintiffs' motion to reconsider is *denied.*

## DISCUSSION

ERISA Section 510 declares it unlawful for an employer:

> to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan....

29 U.S.C. § 1140 (ERISA Section 510).

■ Section 510 protects employees against changes in employment status on benefit–based motivations. *Teumer v. General Motors Corp.*, 34 F.3d 542, 545 (7th Cir.1994). Thus, even if an employer repeatedly amends the terms of a benefit plan on the eve of the benefit's vesting in order to avoid paying those benefits, such an allegation would not state a claim under Section 510. *Teumer,* 34 F.3d at 545. Section 510 is only implicated when an employee alleges that an employer has interfered with the employment relationship in order to defeat the vesting or continued enjoyment of benefit rights.

■ Congress did not provide a specific statute of limitations period for Section 510 claims, as all agree, and, therefore, we look to Indiana law to borrow the "most analogous cause of action." *Teumer,* 34 F.3d at 546.

In its motion for summary judgment, the Union Defendants argued that the Seventh Circuit's analysis in *Teumer, supra,* requires that a two–year statute of limitations be applied to Section 510 claims arising in Indiana. Understandably, Plaintiffs argued that this Court's decision in *Spearman v. General Motors Corporation,* 880 F.Supp. 617 (S.D.Ind. 1994), controls and that Section 510 claims arising in Indiana should have a ten–year limitations period.

In *Spearman,* the court was presented with the question of what statute of limitations period should apply to Section 510 claims. Although the defendant in that case argued that the Indiana's two–year statute of limitations governing employment agreements not in writing (Ind.Code § 34–1–2–1.5) should be borrowed and applied to Section

510 claims, the court held that Indiana's ten-year statute of limitations for contracts in writing (Ind.Code § 34–1–2–2(6)) was the applicable provision. *Spearman,* 880 F.Supp. at 621. The court reasoned:

> Because the federal policy underlying ERISA is preserving the integrity of pension and retirement funds and encouraging employers to fulfill their obligations, the proper characterization of suits involving the payment of pension and retirement benefits is a suit on a written contract. Applying the ten–year limitations period to suits involving the payment of pension and retirement benefits allows time for beneficiaries of plans to discover mistakes and irregularities and enforce their rights if necessary.

*Spearman,* 880 F.Supp. at 621 (internal citations omitted).

Three months after *Spearman* was decided, however, the Seventh Circuit addressed the question of the statute of limitations governing Section 510 claims arising in Illinois. Recognizing the "variant nature of the several rights" recognized in Section 510, the Seventh Circuit discussed whether Illinois' statute of limitations governing retaliatory discharge claims (five years) or contracts in writing (ten years) should be borrowed. *Teumer,* 34 F.3d at 547–49. Discussing the merits of applying Illinois' statute of limitations for contracts in writing, the Court recognized that "[b]enefit plans are themselves contracts between employee and employer" and that interference with a written contract might, therefore, be a "tighter analytical parallel" to a Section 510 claim. *Teumer,* 34 F.3d at 548. Nevertheless, rejecting a case-by–case approach, the court emphasized that "there is much to be said, in the interest of simplicity, for selecting a single most appropriate statute of limitations for all claims under this important and often–invoked federal statutory safeguard." *Teumer,* 34 F.3d at 549. The Court further recognized that Illinois defines its retaliatory discharge claim "broadly to encompass discharges that either retaliate against or interfere with the exercise of favored rights," and, "[t]hus, contract's wrongful prevention doctrine is not after all, the only viable state analogue to ERISA interference claims." *Teumer,* 34 F.3d at 549. Therefore, the Court stated,

"the interference prong of the retaliatory discharge tort quite clearly bears a closer family resemblance to the Section 510 right, as it deals generally with favored areas of public policy and frequently with economic/employment concerns—like worker's compensation—as opposed to wholly general coverage of contract law." *Teumer,* 34 F.3d at 549.

Thus, although *Teumer* did not overrule *Spearman,* it specifically rejected Illinois' ten–year statute of limitations for contracts in writing as the appropriate analogue for Section 510 claims. Plaintiffs argue that *Teumer* narrowly confined its holding " 'to all Section 510 actions in which *Illinois* limitations law is to be borrowed.' " Plaintiffs' Motion to Reconsider at 6 (quoting *Teumer,* 34 F.3d at 550) (emphasis added). They maintain that *Teumer* does not compel any result in Indiana, since it addressed only the appropriate limitations analogue under Illinois law.

As a general matter, Plaintiff is correct that *Teumer* cabined its holding to Section 510 claims arising in Illinois, and it is for precisely that reason that, in its Entry granting summary judgment on Plaintiffs' ERISA claims, the Court noted that although "the result of [the *Teumer* ] holding does not directly control in Indiana ERISA cases, ... the *analysis* used by the Court of Appeals is controlling." Entry (February 7, 1997) at 24. It is because we find *Teumer's* analysis both persuasive and controlling that we held, and hold again today, that it is appropriate to borrow Indiana's two–year statute of limitations to inform Section 510's statute of limitations. *See* Entry (February 7, 1997).

The Seventh Circuit's preference for a single statute of limitations period for Section 510 claims originating in Indiana obviously applies perforce to the case at bar; however, that preference does not lead us to a specific limitations period. Nevertheless, Indiana law itself, when considered together with *Teumer,* strongly suggests applying the two–year, rather than ten–year, statute of limitations to Section 510 claims.

In *Teumer,* the Seventh Circuit explained that Section 510 protects employees against three distinct abuses:

the disruption of employment privileges to prevent (*i.e.*, interfere with) the vesting or enjoyment of benefit rights ...; the disruption of employment privileges to punish (*i.e.*, retaliate for) the exercise of benefit rights; and the disruption of employment privileges to prevent or punish the giving of testimony in any proceeding relating to ERISA or a sister act.

*Teumer*, 34 F.3d at 547. The Seventh Circuit stated that the Illinois tort of retaliatory discharge "originated as a protection for employees seeking to enjoy their workers' compensation entitlements" and is interpreted "broadly to encompass discharges that either retaliate against or interfere with the exercise of favored rights." *Teumer*, 34 F.3d at 548 & 549.

Like Illinois, Indiana's tort of retaliatory discharge originated as a protection for employees seeking to exercise their workers' compensation rights. *See, e.g., Frampton v. Central Indiana Gas Co.*, 260 Ind. 249, 297 N.E.2d 425, 428 (1973) (recognizing exception to at–will employment doctrine because "[i]f employers are permitted to penalize employees for filing workmen's compensation claims, a most important public policy will be undermined. The fear of being discharged would have a deleterious effect on the exercise of a statutory right."). Indiana, again like Illinois, has since broadened the tort to encompass claims involving rights other than those associated with worker's compensation. *See, e.g., McClanahan v. Remington Freight Lines. Inc.*, 517 N.E.2d 390, 393 (Ind.1988) (broadening retaliatory discharge exception to at–will employment doctrine to include firings or threats to fire for refusing to commit an illegal act); *Call v. Scott Brass. Inc.*, 553 N.E.2d 1225 (Ind.App.1990) (applying retaliatory discharge claim to employee terminated for complying with jury summons); *Holtz v. Board of Commissioners of Elkhart County*, 560 N.E.2d 645, 646 (Ind.1990) (finding that employee alleged retaliatory discharge claim where he alleged he was terminated in retaliation for bringing deficiencies in bridge inspection procedures to attention of Indiana Attorney General and Department of Highways); *Haas Carriage. Inc. v. Berna*, 651 N.E.2d 284 (Ind.App.1995) (determining that employee stated claim for retaliatory discharge where he alleged termi-

nation in retaliation for failure to commit an unlawful act); *Pepsi–Cola Gen'l Bottlers. Inc. v. Woods*, 440 N.E.2d 696, 697 (Ind.App. 1982) (stating that retaliatory discharge claim applies when employee is discharged "solely for exercising a right conferred on him by a statute, constitution, or other positive law."). Indiana's retaliatory discharge claim, like Illinois', also embraces claims that an employer interfered with a worker's employment to prevent the worker's rights to file for compensation benefits, as well as for threats of discharge. *Stivers v. Stevens*, 581 N.E.2d 1253, 1254 (Ind.App.1991) (recognizing retaliatory discharge claim where employer prevented employee's exercise of worker's compensation rights because of employee's intention to file claim); *see also Frampton*, 297 N.E.2d at 428 (stating that threat of discharge in order to interfere with exercise of worker's compensation rights is in "clear contravention of [Indiana] public policy").

Thus, as with Illinois law, Indiana also recognizes that the retaliatory discharge tort "encompass[es] discharges that either retaliate against or interfere with the exercise of favored rights," *Teumer*, 34 F.3d at 549 (discussing Illinois law on retaliatory discharge), and Indiana's retaliatory discharge claim is an appropriate analogue to Section 510 claims.

In addition to the fact that Indiana's retaliatory discharge claim is similar both to Section 510 and Illinois' retaliatory discharge claim (endorsed by the Seventh Circuit as a more appropriate fit for purposes of statutes of limitations than actions for breach of contract), Indiana courts have specifically rejected the proposition considered (and also' rejected) in *Teumer*, to wit, that the benefits plan may be regarded as the contract at issue in employment disputes analogous to ERISA Section 510 claims. In *Kemper v. Warren Petroleum Corp., Inc.*, the plaintiff alleged that his employer violated a condition of his pension plan and sued for breach of contract. 451 N.E.2d 1115, 1115 (Ind.App. 1983). Although it was undisputed that the plaintiff was employed pursuant to an oral employment contract, the plaintiff argued that the benefit plan was the contract upon

which he was suing, in order to gain the benefit of a longer statute of limitations period. The Indiana Court of Appeals rejected this argument, stating that the pension plan was but a " 'privilege' " of the plaintiff's employment and concerned his " 'retirement.' " *Kemper,* 451 N.E.2d at 1117 (quoting terms from Ind.Code § 34–1–2–1.5). The court further stated:

> The "privilege" of employment, although written, does not negate the fact the privilege arose out of [plaintiffs] oral employment contract with [the defendant]. When an action concerns a privilege of employment and the employment was undeniably the result of an oral contract, I.C. 34–1–2–1.5 controls.

*Kemper,* 451 N.E.2d at 1117; see also *Miller v. International Harvester Co.,* 811 F.2d 1150, 1151 (7th Cir.1987) (applying Ind.Code Section 34–1–1–2–1.5 to claim regarding pension as "privilege" of employment, rather than six year statute of limitations period applicable to promissory estoppel, where plaintiff maintained his employer induced him to quit employment by promising pension benefits for which it later claimed he was ineligible); *Peake v. International Harvester Co.,* 489 N.E.2d 102, 104–06 (Ind.App. 1986) (applying Ind.Code Section 34–1–1–2–1.5, rather than limitations for contract in writing, or for quasi–contract or unjust enrichment actions, where plaintiff maintained that employer appropriated idea without compensating him; rejecting proposition that collective bargaining agreement or "New Ideas Suggestion Plan" were written contracts independent of plaintiff's employment). Indiana Code Section 34–1–2–1.5 is a two–year statute of limitations applied generally to employment–related actions.

Thus, the very reason considered by the Seventh Circuit in *Teumer* for possibly borrowing and applying to ERISA Section 510 claims Illinois' statute of limitations for contracts in writing has been rejected as a basis for applying a statute of limitations under Indiana law. Accordingly, this Court is of the firm view that, based on the similarity between Indiana's retaliatory discharge tort and Section 510, and the fact that Indiana has rejected the theory that a contract action is the appropriate claim to vindicate alleged breaches related to benefits plans, as well as

the Seventh Circuit's opinion in *Teumer,* supra, any decision to borrow Indiana's ten–year statute of limitations for contracts in writing for Section 510 claims has been foreclosed.

Plaintiff argues that Indiana's two–year statute of limitations applicable to claims of retaliatory discharge should not be borrowed for Section 510 claims because Indiana courts have held that retaliatory discharge sounds in tort and not contract. *See, e.g., Holtz v. Board of Commissioners of Elkhart County,* 560 N.E.2d 645, 646 (Ind.1990); Haas *Carriage, Inc. v. Berna,* 651 N.E.2d 284, 289 (Ind.App.1995). Plaintiff asserts that, in Illinois, the courts have recognized that retaliatory discharge is a tort arising out of a contractual relationship and therefore have rejected applying Illinois' two–year statute of limitations for personal injury, choosing instead to apply Illinois' residual five–year statute of limitations for "all civil actions not otherwise provided for." *See Henon v. Lever Bros. Co.,* 114 Ill.App.3d 608, 70 Ill.Dec. 322, 323, 449 N.E.2d 196, 197 (1983). Because Indiana law has applied its statutory section governing injuries to person, character or property to claims of retaliatory discharge, Indiana's retaliatory discharge tort does not "seamlessly" parallel Illinois', and, therefore, according to Plaintiffs, Indiana's retaliatory discharge claim is not the appropriate analogue for Section 510.

Indiana has, indeed, held that retaliatory discharge sounds in tort, notwithstanding that the employment relationship may have been created by contract. See Holtz, 560 N.E.2d at 646. Concerned primarily that at–will employees without a "contractual right for the continuation of ... employment" be able to vindicate claims of retaliatory discharge, (Holtz, 560 N.E.2d at 646 ("In so holding we would observe that were we to hold Holtz' [sic] cause of action sounding in contract, persons in like situations would be without remedy.")), Indiana courts have applied Indiana's two–year statute of limitations for "injuries to person or character" to claims of retaliatory discharge (Ind.Code § 34–1–2–2–(1)), an approach rejected in Illinois. *See Henon,* 70 Ill.Dec. at 324, 449 N.E.2d at 198. We fail to understand, how-

ever, how Indiana courts' choice of which statutory section most appropriately governs a claim of retaliatory discharge alters the Court's analysis that Indiana's tort of retaliatory discharge is the most analogous cause of action to Section 510 under Indiana law. Although, as discussed infra, we believe that the two–year statute of limitations governing employment agreements not in writing (Ind. Code § 34–1–2–1.5) might be a more appropriate fit for retaliatory discharge under Indiana law, when borrowing a state statute of limitations, we look to the most analogous state law cause of action and borrow that limitations period, unless to do so would offend the federal cause of action at issue. *Teumer*, 34 F.3d at 546–50. The mere fact that Indiana holds that retaliatory discharge claims sound in tort in order to ensure that at–will employees have a remedy in the face of wrongdoing, and, therefore, have applied a tort limitations period to those claims, does not undermine the Court's reasoning that it is the most appropriate analogue to Section 510 claims arising in Indiana.

Plaintiff next argues that a two–year statute of limitations should not be borrowed to apply to Section 510 claims because a two–year statute of limitations does not provide sufficient time "to discover mistakes and irregularities and enforce [Section 510] rights" (quoting *Spearman*, 880 F.Supp. at 621) and is, therefore, at odds with the policies and remedial goals reflected in ERISA Section 510. Plaintiff argues that, where Congress did provide limitations periods in ERISA, they are never shorter than three years. Plaintiffs' Motion to Reconsider at 12 (citing 29 U.S.C. §§ 1113, 1303(e)(6), 1303(f)(5), 1368(d)(2), 1370(f) and 145l(f)). Accordingly, Plaintiffs argue, a two–year statute of limitations period is inconsistent with the policies reflected in ERISA.

Although those provisions of ERISA which carry express statute of limitations periods do not fall below three years, we nevertheless do not believe that applying a two–year limitations period to Section 510 claims is inconsistent with ERISA (particularly in light of the Seventh Circuit's holding in *Teumer*). First, other courts have consistently borrowed state statutes of limitations of two years or less to apply to Section 510 claims. *See, e.g., Sandberg v. KPMG Peat Marwick,*

111 F.3d 331, 336 (2d Cir.1997) (applying two–year statute of limitations to Section 510 claims); *Musick v. Goodyear Tire & Rubber Co.,* 81 F.3d 136 (11th Cir.) (applying two–year statute of limitations to Section 510 claims), *cert. denied,*—— U.S.——, 117 S.Ct. 389, 136 L.Ed.2d 305 (1996); *Felton v. Unisource Corp.,* 940 F.2d 503, 512 (9th Cir. 1991) (applying two–year statute of limitations to Section 510 claims); *McClure v. Zoecon, Inc.,* 936 F.2d 777, 778–79 (5th Cir.1991) (applying two–year statute of limitations to Section 510 claims); *Sutter v. First Union Nat'l Bank of Virginia. Inc.,* 932 F.Supp. 753, 757 (E.D.Va.1996) (applying one–year statute of limitations to Section 510 claims). Second, a Section 510 claim hinges on an adverse employment action. As discussed, *supra,* an employer may manipulate an employee's benefits plan in order to defeat the employee's rights to benefits, but such action, in and of itself, does not give rise to a Section 510 claim; rather, it gives rise to a Section 502(a)(1)(B) claim. Appropriately, a longer statute of limitations period applies to claims alleging precisely that sort of "tinkering," because the triggering event for the injury (the employer's manipulation of benefits conditions) might very well be subtle and thus difficult to discover. *Teumer,* 34 F.3d at 545–46. In contrast, the triggering event necessary to state a Section 510 claim—an employment action taken in order to defeat benefit rights—is known to the employee from the moment the action occurs. A two–year statute of limitations period following that action provides ample time for an employee to bring a claim and does not in any way undermine or defeat the policies embodied in ERISA Section 510.

Plaintiffs also argue that the only other Indiana court to follow *Teumer's* lead mistakenly believed that the Illinois statutory section borrowed in *Teumer* was two years, instead of the actual five years applied by the Seventh Circuit and that this mistaken belief was the primary reason that the court followed *Teumer. See Bollenbacher v. Helena Chemical Co.,* 934 F.Supp. 1015 (N.D.Ind. 1996). *Bollenbacher,* the only post–*Teumer,* published case to address the issue of what Indiana statute of limitations should apply to Section 510 claims, rejected the reasoning in *Spearman, supra* and followed the reasoning

in *Teumer*. The court found the *Teumer* decision more persuasive, because *Spearman* pre-dated *Teumer* and because "Indiana's statute of limitations for a retaliatory discharge claim, the same type of claim the Seventh Circuit in *Teumer* found analogous to a Section 510 action, also has a two–year statute of limitations." *Bollenbacher,* 934 F.Supp. at 1030. Thus, although *Bollenbacher* incorrectly believed that the impact of its holding would be to coordinate the borrowed limitations periods for Section 510 claims arising under both Indiana and Illinois law, we nevertheless agree with its fundamental reasoning that the holding in *Teumer* functionally abrogates the reasoning in *Spearman.*

Plaintiffs next argue that "[i]t is patently illogical" to have a five–year statute of limitations period for Section 510 claims arising in Illinois and a two–year statute of limitations period for Section 510 claims arising in Indiana, a situation it contends will "encourage forum shopping." Plaintiffs' Motion to Reconsider at 12. Even if it were plausible that an employee with a Section 510 claim by virtue of an Indiana employer's action would file suit in Illinois to get the benefit of Illinois' longer statute of limitations, Plaintiffs fail to explain why, if the Court were to find persuasive their advocated position that a ten years limitations period applies in Indiana so that Section 510 claims would still have different limitations periods for claims arising in the two states, Illinois plaintiffs would not still flock to Indiana courts to pursue Section 510 claims. Given the respective statutory schemes in Illinois and Indiana, there is no way to eliminate the disparity between Section 510 claims arising in the two states, and the fact of a difference in limitations periods does not recommend borrowing a ten–year statute of limitations over a two–year statute of limitations.

Plaintiffs further argue that, in its entry for summary judgment, the Court cited the two–year limitations period in Indiana Code Section 34–1–2–1.5 as applicable to retaliation claims and that, because no other Indiana court has held that section applicable to claims of retaliatory discharge, this Court should reconsider its February 7, 1997 entry of summary judgment. Although an empty victory, Plaintiffs are correct: as discussed, *supra,* the two courts in Indiana to cite to a specific code section for retaliatory discharge have referenced the two–year limitations in Indiana Code Section 34–1–2–2(1). *See Scott v. Union Tank Car Co.,* 402 N.E.2d 992, 993 (Ind.App.1980) (holding that the two–year statute of limitations set forth in Ind.Code § 34–1–2–2(1) governs employee's claim that he was discharged in retaliation for filing a worker's compensation claim); *Bollenbacher,* 934 F.Supp. at 1029 (citing Ind.Code § 34–1–2–2(1) as governing claims of retaliatory discharge in Indiana). We are not persuaded by the court's holding in *Bollenbacher* that Section 34–1–2–2(1) applies to these claims. See *Bollenbacher,* 934 F.Supp. at 1029 (citing *Haas Carriage, supra* for the proposition that retaliatory discharge sounds in tort and applying, without further reasoning, Ind. Code Section 34–1–2–2(1) as the general tort statute of limitations). However, while we believe that Indiana Code Section 34–1–2–1.5 ("Employment related actions; two year limitation") may be the more appropriate limitations statute for retaliatory discharge claims (*see Kemper,* 451 N.E.2d at 1117 (stating that Ind.Code Section 34–1–2–1.5 is "broad in its effect" and its "application does not depend upon the specific nature of the dispute, *e.g.,* discharge, wages, retirement, etc. Rather, its application depends upon whether the specific dispute arose out of an employment relationship. If it does, then I.C. 34–1–2–1.5 applies.")), when borrowing Indiana law, we must nevertheless borrow it as we find it (and we look to state law to borrow analogous causes of action and their statute of limitations, not simply to the most analogous statute of limitations).[1] Since the only

---

1. The Supreme Court has stated that, when necessary to borrow state law to inform a statute of limitations period for a federal statute, courts should "apply the most closely analogous statute of limitations under state law." *Wilson v. Garcia,* 471 U.S. 261, 267–70, 105 S.Ct. 1938, 1942–44, 85 L.Ed.2d 254 (1985) (quoting *DelCostello,* 462 U.S., at 158, 103 S.Ct., at 2287). In *Teumer,* the Seventh Circuit examined analogous state law causes of action and then applied the limitations period governing the closest fit (retaliatory discharge). *See Teumer,* 34 F.3d at 546–50. Although we believe that the most closely analogous *statute limitations* for Section 510 claims under Indiana state law is Indiana Code Section 34–1–2–1.5 *Kemper, supra,* we nevertheless modify our earlier ruling to follow the Seventh Cir-

Indiana court to invoke a particular statute of limitations for a claim of retaliatory discharge applied Indiana Code Section 34–1–2–2(1), we likewise believe that it is that statutory section appropriately borrowed to inform a limitations period for Section 510 claims arising in Indiana. As stated, however, this is an empty victory for Plaintiff, as Indiana Code Section 34–1–2–2(1), just as the broader 34–1–2–1.5, applies a two–year statute of limitations to claims of retaliatory discharge. Accordingly, as decided in the Court's entry of February 7, 1997, applying a two–year statute of limitations to Plaintiffs' ERISA Section 510 claims, those claims are time barred.

■ Finally, Plaintiffs argue that if we determine to abandon our ruling in *Spearman*, we should do so prospectively and not apply a two–year statute of limitations to their ERISA Section 510 claims. As a general rule, courts apply their decisions to the parties before them, in other words, retroactively. However, the Supreme Court has acknowledged that in some, unusual cases, a court may apply its decision prospectively. *See, e.g., Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). *Chevron Oil* recommends three factors be considered in determining whether to apply a rule prospectively: (1) whether the announced rule will "establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed;" (2) whether retroactive application of the rule will "further or retard its operation;" and (3) whether retroactive application of the rule will produce "substantial inequitable results." *Chevron Oil*, 404 U.S. at 106–07, 92 S.Ct. at 355.

Although, of course, our decision today does, in fact, abrogate the decision in *Spearman*, we do not believe that *Spearman* (decided on June 29, 1994) was clear precedent on which Plaintiffs were entitled to rely after September 7, 1994, the date on which the Seventh Circuit's ruling in *Teumer* was decided. *Teumer* addressed itself to the ques-

tion of the appropriate statute of limitations for Section 510 claims arising in Illinois; nonetheless, its reasoning and its conclusion were directly at odds with the earlier decision in *Spearman*. In addition, as stated supra, a two–year statute of limitations does not offend the underlying policies or goals of ERISA, and we believe Plaintiffs should have, at least, been on notice since *Teumer* that a contract analogue was not the most appropriate for Section 510 claims. Thus, we do not believe that applying the two–year statute of limitations period to Plaintiffs will create in inequitable result in this case.

Furthermore, we believe it a far reach for Plaintiffs, whose claims appear to arise at the earliest in 1981 and at the latest in June 1985, to maintain that they relied upon our holding in *Spearman*, given that they filed their complaint fourteen years after their lay–offs and nine years and eleven months after they were rehired. Even if Plaintiffs genuinely believed that *Spearman* governed their claims (and was not directly affected by the Seventh Circuit's analysis in *Teumer*), their timing suggests it is far more likely that they were simply dilatory in filing, rather than reasonably relying on questionable law. Accordingly, we do not believe the *Chevron Oil* factors weigh against the presumption of retroactive rule application in this case and therefore, on this ground also, Plaintiffs' motion to reconsider is *denied.*

■ In light of our ruling that ERISA Section 510 claims are governed by the two–year limitations period applicable to claims of retaliatory discharge in Indiana, we grant the Corporate Defendants' (Delco Electronics Corporation and General Motors Corporation) motions for leave to amend their answer and for summary judgment on Plaintiffs' ERISA Section 510 claims. To hold otherwise would be to frustrate justice under the circumstances of this case. *Cf. Teamsters Local 282 Pension Trust Fund v. Angelos*, 815 F.2d 452, 456 n. 3 (7th Cir. 1987) ("'Under collateral estoppel, once an issue is actually and necessarily determined

cuit's lead in *Teumer* and borrow Indiana Code Section 34–1–2–2(1) as applied to claims of retaliatory discharge (the most closely analogous cause of action under Indiana law). The out-

come, in this case, is of no practical consequence, as both statutes of limitations provide for a two year period.

by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation.' "); (quoting *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979)). Plaintiffs allege the same behavior regarding their Section 510 claims as to both the Union Defendants and the Corporate Defendants. See Complaint ¶ 60 ("Delco Electronic, General Motors, the International Union and Local 292 acted together to each discriminate against the Employees in order to interfere with the full attainment of the rights of the Employees, and similarly situated employees, under their qualified employee benefit plan under which they were participants and beneficiaries."). There is no question that Plaintiffs have had a "full and fair opportunity" to litigate the question of ERISA Section 510 claims' statute of limitations and that the Court's ruling is dispositive of those claims. Cf. *Havoco of America Ltd. v. Freeman Atkins & Coleman, Ltd.,* 58 F.3d 303, 307 (7th Cir.1995) ("Collateral estoppel will apply if: (1) the issue sought to be precluded is the same as that involved in the prior action; (2) the issue was actually litigated; (3) the determination of the issue was essential to the final judgment; and (4) the party against whom estoppel is invoked was fully represented in the prior action."); *Teamsters Local 282,* 815 F.2d at 456 n. 3 ("Collateral estoppel is a judicially-created doctrine that is properly applied when an issue raised by a party to a suit has been actually and necessarily litigated in a prior suit and when the party against whom estoppel is asserted has had a 'full and fair opportunity' to litigate the issue."). Accordingly, the Corporate Defendants' motions for leave to amend their answer to assert the affirmative defense of statute of limitations and for summary judgment is *granted.*

## CONCLUSION

Plaintiffs contend that they were victims of numerous forms of discrimination by the Union and Corporate Defendants. Yet, as the Court found in its February 7, 1997 entry, all of those claims were barred as a matter of law and many were barred as a result of the Plaintiffs' own delay in advancing their claims. In their motion to reconsider, Plaintiffs challenge the Court's initial determination that their ERISA Section 510 claims should be governed by the two–year statute of limitations, arguing instead in favor of a ten–year limitations period borrowed from state law contract–in–writing claims consistent with our prior ruling in *Spearman,* supra. Nevertheless, we hold again today, that following the Seventh Circuit's ruling in *Teumer, Spearman's* holding was not reliable, and that, in light of the Seventh Circuit's ruling, Indiana's tort of retaliatory discharge is the appropriate analogue for Section 510 claims arising in Indiana. Accordingly, a two–year statute of limitations as provided for in Indiana Code Section 34–1–2–2(1) applies to Plaintiffs' Section 510 claims, and Plaintiffs' motion to reconsider is *denied.* In addition, the Corporate Defendants' motion for leave to amend their Answer to assert a statute of limitations defense and for summary judgment on Plaintiffs' ERISA Section 510 claims is *granted* and for the reasons herein fully explicated summary judgment is entered in favor of the Corporate Defendants on the Section 510 claims. Finally, upon revisiting these issues, we discover that judgment was mistakenly entered in this case on February 7, 1997. Cf. *Minority Police Officers Association of South Bend v. City of South Bend Ind.,* 721 F.2d 197, 200 (7th Cir.1983) ("The word 'judgment' in the term 'partial summary judgment' is a misnomer. A partial summary judgment is merely an order deciding one or more issues in advance of trial; it may not be a judgment at all, let alone a final judgment on a separate claim."). Accordingly, the "judgment" entered on February 7, 1997 is *vacated* and judgment is entered today for Defendants as to all of Plaintiffs' claims.